Sedley ALLEY, Appellant,

v.

STATE of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee, at Jackson.

April 20, 1994.

No Permission to Appeal Applied for to the Supreme Court.

---

Arthur E. Quinn, Timothy R. Holton, Memphis, for appellant.

Charles W. Burson, Atty. Gen. & Reporter, Joel W. Perry, Asst. Atty. Gen., Nashville, John W. Pierotti, Dist. Atty. Gen., Henry P. Williams, John W. Campbell, Chris B. Craft, Asst. Dist. Attys., Memphis, for appellee.

OPINION

WHITE, Judge.

Appellant, Sedley Alley, appeals as of right from the dismissal of his petition for post-conviction relief by the Shelby County Criminal Court. On March 18, 1987, appellant was convicted of and sentenced to death for the brutal killing of nineteen year-old Suzanne Marie Collins, a Marine lance corporal stationed at Millington Naval Base.[1] Appellant also received consecutive forty-year sentences for aggravated kidnapping and aggravated rape. On August 7, 1989, the Supreme Court of Tennessee affirmed the verdict in *State v. Alley*, 776 S.W.2d 506 (Tenn.1989) and, on February 21, 1990, ordered that his execution be carried out on May 2, 1990.[2] On April 25, 1990, appellant filed a pro se petition for post-conviction relief. Counsel was appointed, and, after a series of hearings in which the trial court ruled on various defense motions, evidentiary hearings were held on March 1st and 15th and April 5th, 26th, and 29th, 1991. On September 23, 1991, the trial court entered findings of fact and law denying the petition for post-conviction relief.

Appellant raises ten issues on appeal. Five issues are related to the allegations raised in the post-conviction petition: ineffective assistance of counsel, unconstitutional jury instructions, prosecutorial misconduct, unconstitutionality of the death penalty, and other trial errors.[3] Five issues concern post-conviction hearing procedures[4] and allege that the trial court erred in:

1. disallowing appellant an opportunity to make an offer of proof regarding the deficiencies in the medical and psychological evaluations at trial; (Issue V)

2. denying appellant an opportunity to introduce evidence regarding the deficiencies in the medical and psychological evaluations at trial; (Issue IV)

3. denying appellant a full and fair hearing on all available grounds for relief; (Issue VI)

4. failing to recuse himself; (Issue I) and,

5. denying appellant funds to retain an expert to review the medical records and conduct an analysis of appellant's medical conditions. (Issue III)

Since our conclusion is that this case must be remanded to a different trial judge for further proceedings, we will not, at this time, address the substantive issues raised by appellant in his post-conviction petition. Some background information about the trial is necessary, however, to understand the issues that arose during the post-conviction proceedings.

At trial, appellant raised an insanity defense. Two medical experts, Dr. Allen Battle, a clinical psychologist with considerable experience with multiple personality disorders, and Dr. Willis Henry Marshall, a psychiatrist at Middle Tennessee Mental Health Institute, testified that appellant suffered from a multiple personality disorder.[5] According to trial counsel, Dr. Battle was prepared to testify that when Alley murdered Collins, a personality other than the personality known as "Sedley" was in control and that the controlling personality was legally insane. However, approximately two weeks prior to trial, after a meeting with the prosecutor, Dr. Battle told defense counsel that he was no longer certain that a psychotic personality was in control at the time of the killing. Because he was not certified to give opinions of legal sanity or insanity in Tennessee, at trial on cross-examination, Dr. Battle stated that he could not testify that appellant was insane at the time of the murder. Dr. Marshall testified that appellant was suffering from a multiple personality disorder and that there was some evidence that a psychot-

---

1. A complete statement of the facts in this case may be found in the Supreme Court's opinion, *State v. Alley*, 776 S.W.2d 506 (Tenn.1989). It is unnecessary to recount them here.

2. Judge Jones of the Court of Criminal Appeals granted an indefinite stay of execution on April 26, 1990.

3. Appellant's issues II, VI, VIII, IX, and X.

4. Appellant's issues I, III, IV, V, and VI.

5. Through the use of hypnosis and sodium-amytal, the experts identified three separate personalities: Sedley, Billie, and one known as "Power" or "Death."

ic personality named "Power" was in control at the time of the murder.

The state presented expert testimony from Dr. Sam Craddock, a clinical psychologist from Middle Tennessee Mental Health Institute and Dr. Zillur R. Athar, a forensic psychiatrist in private practice. They diagnosed appellant as borderline personality with mixed substance abuse and malingering. Dr. William Brooks, III, a psychiatrist with Midtown (Memphis) Mental Health Institute and Dr. Lynne Zager, a clinical psychologist, found that appellant did not exhibit multiple personalities. Dr. William Gentry, Jr., two social workers, and a psychiatric technician also testified. None of the various state's experts supported an insanity defense.

## I. Exclusion of Testimony

On post-conviction, appellant contends, among other allegations, that trial counsel was ineffective in the selection and use of experts, that counsel failed to provide the records and other information required by the experts, that counsel failed to communicate with the experts, and that, as a result, counsel did not develop a cohesive theory of defense and consequently, employed a fatally flawed trial strategy.

In its order entered July 16, 1991, the trial court, relying upon federal case law,[6] excluded the testimony of those psychiatric witnesses who testified at trial from the post-conviction hearing. The trial court reasoned that the performance of an expert witness is not a proper basis for post-conviction relief as the constitutional umbrella does not include the competency of expert witnesses. Moreover, the trial court denied counsel's request to present an offer of proof "since further inquiry into the performance of the psychiatric experts as a basis for post-conviction relief would be delving into an area that does not give rise to a constitutional violation."

On appeal, appellant contends that the trial court erred in denying him an opportunity to make an offer of proof. (Appellant's issue IV). Appellant argues that Rule 103(b) of the Tennessee Rules of Evidence requires a court excluding testimony to permit the making of an offer of proof in question and answer form upon request.[7]

Appellant argues that the testimony excluded by the trial court was relevant to determining whether trial counsel had provided effective assistance of counsel. (Appellant's issue VI). According to appellant, the testimony would have shown that extensive miscommunication existed between counsel and the experts, that counsel failed to consider and utilize experts in determining whether appellant was able to make a knowing waiver of his Fifth Amendment rights, and that counsel failed to properly prepare the expert by not providing appellant's complete medical history to them. In addition, appellant argues that, since medical and psychological issues were the focus of the defense, he is unable to demonstrate prejudice as required by the second prong of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), without the excluded testimony.

The state does not refute the merits of these arguments but argues that issues IV and VI were not properly briefed and are, therefore, waived. We do not find that appellant waived either issue. Our court Rule 10(b) provides that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived." (emphasis added). Appellant's brief contains six pages of argument relating to issues IV and VI. Those pages contain numerous references to the record. Rule 103(b) of the Tennessee Rules of Evidence is cited. In addition, to support his contention that he failed to receive a full and fair hearing of all available grounds for relief, appellant argues that he is

---

6. The trial court relied on *Harris v. Vasquez,* 913 F.2d 606 (9th Cir.1990); *Clisby v. Jones,* 907 F.2d 1047 (11th Cir.1990); *Silagy v. Peters,* 905 F.2d 986 (7th Cir.1990); and *Waye v. Murray,* 884 F.2d 765 (4th Cir.1989).

7. Rule 103(b) provides: Record of Offer and Ruling.—The court may add any other or further statement which shows the character of evidence, the form in which it was offered, the objection made, and the ruling. It shall permit the making of an offer in question and answer form.

unable to comply with the *Strickland* requirements absent this proof. Appellant has adequately briefed this issue pursuant to Rule 10(b). We will, therefore, consider the merits.

The trial judge first denied counsel's request to present an offer of proof in the evidentiary hearing held on April 29, 1991. The following exchange between appellant's counsel and the court took place:

> MR. QUINN: Well, your Honor, You're cutting us off on getting Dr. Battle up here to testify about whether he really waffled. If I asked Dr. Battle, well, did you waffle, Dr. Battle—
>
> THE COURT: What do you think a man with his ego would say? Listen, I know exactly.
>
> MR. QUINN: And, Your Honor is ruling out, You are precluding us from getting into that. And even if You do stick with your ruling, Your Honor, we—
>
> THE COURT: You are asking for an offer.
>
> MR. QUINN: An offer of proof, that I think is allowed under the law, and would ask You[3] to do it. Now, if Your Honor sticks with this ruling, I don't know how You want to do it, I've seen some Judges actually leave while an offer of proof is being made but—
>
> [Other matters are discussed and later defense counsel asks the court to rule on the offer of proof.]

8. The trial court formally denied the request for an offer of proof in its Order of July 16, 1991.

9. Rule 103 of the Tennessee Rules of Evidence provides:

> (a) **Effect of Erroneous Ruling.** Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
>
> . . . . .
>
> (2) **Offer of Proof.** In case the ruling is one excluding evidence, the substance of the evidence and the specific evidentiary basis supporting admission were made known to the court by offer or were apparent from the context.
>
> (b) **Record of Offer and Ruling.** The court may add any other or further statement which shows the character of the evidence, the form in which it was offered, the objection made,

MR. QUINN: With regard to our offer of proof, Your Honor?

THE COURT: That's denied. I don't see the need.[8]

The general rule is that "assuming an offer of proof has been seasonably made, it is error for the trial court to refuse to permit counsel to state what evidence he is offering." 89 A.L.R. "Offer of Proof—Ruling—Error" § 2 at 283 (1963). The purpose of an offer is two-fold. First, the proof informs the trial court what the party intends to prove so that the court may rule intelligently. *Id.* § 1 at 281. Second, an offer creates a record so that an appellate court can determine whether there was reversible error in excluding the evidence. *Id.*

In Tennessee, two rules address offers of proof.[9] The applicable evidentiary rule requires appellants who challenge rulings that exclude evidence to make an offer of proof unless the substance of the evidence is otherwise apparent. On appeal, an appellate court may not find that the exclusion of evidence was error unless a party's substantial right was affected and an offer of proof is contained in the record. Tenn.R.Evid. 103(a)(2). An appellate court may find error where no offer was made if the substance of the evidence and the specific evidentiary basis for admission are apparent from the record. *Id.* Consequently, though not explicitly stated, it is apparent that courts are required, in appropriate circumstances, to allow offers of proof when evidence is excluded so

and the ruling. It shall permit the making of an offer in question and answer form.

Rule 43.03 of the Tennessee Rules of Civil Procedure provides:

> **Record of Excluded Evidence.**
>
> In an action tried by a jury, if an objection to proffered evidence is sustained by the court, the examining attorney may make a specific offer of what he expects to prove by that evidence. The court may require the proffered evidence or offer of proof to be presented out of the hearing of the jury. The court may add such other or further statement as clearly shows the character of the evidence, the form in which it was offered, the objection made, and the ruling thereon. In actions tried without a jury, a similar procedure may be followed.

as to enable consideration of the issue on appeal.

The second applicable rule is found in the Tennessee Rules of Civil Procedure. While obviously not applicable to criminal cases, Tenn.R.Civ.P. 1, the civil rules may be indicative of appropriate procedure. *See State v. Goad,* 707 S.W.2d 846, 853 (Tenn.1986), *infra* note 11. Rule 43.03 of the civil rules allows offers of proof when the court excludes proffered evidence. Tenn.R.Civ.P. 43.03.

Tennessee courts have rarely been asked to consider whether refusing to allow offers of proof is error. The dearth of Tennessee cases on the issue suggests, perhaps, that offers are rarely denied. In two pre-Tennessee Rules of Evidence cases, however, appellate courts were called upon to determine whether error resulted when trial courts denied litigants the opportunity to make offers of proof. In *Bray et al. v. State,* 2 Tenn. Crim.App. 18, 450 S.W.2d 786 (1969), *cert. denied* (Tenn.1970), this court reversed a trial judge's order refusing to allow an offer of proof of an excluded witness' testimony. More recently, in *Raines v. Raines,* no number in original (Tenn.Ct.App., Nashville, May 17, 1985), the Court of Appeals reiterated the general rule that "where an offer of proof is necessary, it is error for the trial court to refuse an opportunity to counsel to state what he proposes to prove by the evidence offered." *Raines, supra,* slip op. at 6 (quoting 88 C.J.S. Trial § 73 (1955)).

The *Raines* court declined to establish a per se rule requiring reversal in all cases in which an offer had been rejected but held instead:

It is clear that it may be reversible error for a trial judge to refuse to allow a party to preserve excluded evidence, either by oral statement of counsel, stipulation, document or testimony.

Whether such refusal is reversible must depend upon the facts and circumstances of each individual case, including the apparent nature and admissibility of the evidence and its relation to determinative issues.

Where it is obvious that the proffered evidence could not possibly be competent or could not possibly be relevant to the issues, a refusal to encumber the record with such evidence would not be error. Where such incompetence or irrelevance is not obvious, it would be error to exclude from the record any reasonable indication of the competence, relevancy and general import of the excluded evidence.

*Id.* at 7.

■ We concur with the reasoning in *Raines.* In circumstances in which it is obvious from the record that the proffered evidence could, under no circumstances, be relevant to the issues, a trial court's refusal to grant an offer of proof is not error. However, if the obvious incompetence or irrelevance is not readily apparent from the record, it is error to exclude any reasonable offer which demonstrates the relevance and general import of the excluded evidence.

The reason for such a rule is quite clear. When a party contends that the trial court erred in excluding testimony, the need for a description of that testimony is compelling. Absent such a showing, an appellate court cannot determine whether the exclusion was error, and if error is found, whether the error is harmless.

In *State v. Goad,* the Tennessee Supreme Court stated:

In order for an appellate court to review a record of excluded evidence, it is fundamental that such evidence be placed in the record in some manner. When it is a document or exhibit, this is done simply by having the exhibit marked for identification only and not otherwise introduced. When, however, it consists of oral testimony, it is essential that a proper offer of proof be made in order that the appellate court can determine whether or not exclusion was reversible.

*State v. Goad,* 707 S.W.2d 846, 852–53 (Tenn. 1986).

Similarly, in *Bray,* after holding exclusion of testimony to be error, this court stated, "If we were permitted to know what the tendered witness would have testified to, then perhaps the error would have been harmless. But, under this record, we could only speculate; and the trial court, by refusing to allow

the tender of proof moved for, makes a reversal ... mandatory." 450 S.W.2d at 787. *Raines* also repeated the rationale:

> Where appellate review is de novo upon the record, the appellate court must be free to review and revise all evidentiary rulings of the trial court and to decide the issues anew upon that evidence which the appellate court considers admissible. If excluded evidence is not preserved, this procedure cannot be followed. Therefore, it is especially important to preserve all excluded evidence for the consideration of the appellate court. Otherwise, a new trial may be the only just alternative.

*Raines,* slip op. at 6.[10]

 Although, the standard of review in this instance is not "de novo on the record", the same considerations apply. In post-conviction proceedings, petitioner has the burden of proving the grounds raised in the petition by a preponderance of the evidence. *Clark v. State,* 800 S.W.2d 500, 506 (Tenn. Crim.App.), *perm. to appeal denied* (Tenn. 1990). When reviewing the dismissal of a post-conviction petition, this court must affirm the judgment of the trial court unless the evidence in the record preponderates against the judgment. *Bratton v. State,* 477 S.W.2d 754, 756 (Tenn.Crim.App.1971), *cert. denied* (Tenn.1972). If the record of a post-conviction proceeding does not contain all evidence that this court may find admissible, we cannot determine whether the evidence preponderates against the trial court's findings. Nor can we determine whether the trial court erred in excluding evidence that may arguably be relevant to issues raised in the post-conviction proceeding.

 Having concluded that it is error to disallow offers of proof when the excluded evidence is not obviously incompetent or irrelevant, we must consider whether specific methods for offers of proof are required.

While the rules and cases do not limit offers to a particular method, Rule 103(b) does require that a trial judge "permit the making of an offer in question and answer form." Tenn.R.Evid. 103(b). Additionally, our Supreme Court has suggested that question and answer offers of excluded testimony are "the better practice." *Farmers–Peoples Bank v. Clemmer,* 519 S.W.2d 801, 804 (Tenn.1975); *see State v. Goad,* 707 S.W.2d 846, 853 (Tenn.1986) (finding counsel's proffer to be inadequate, but remanding).[11] Thus, not only are question and answer offers such as were attempted in this case appropriate, they are preferred, and the trial court must allow them when appropriately offered. N. Cohen, D. Paine, S. Sheppeard, *Tennessee Law of Evidence,* § 103.4 at 16 (2d ed. 1990).

 The final inquiry is whether the excluded evidence was obviously incompetent or irrelevant so as to allow the denial of the offer of proof. In this case, the trial court correctly ruled that testimony to demonstrate the incompetence or negligence of the experts is inadmissible if presented in lieu of the constitutional issue of ineffective assistance of counsel. *Waye v. Murray,* 884 F.2d 765 (4th Cir.1989). Such testimony is obviously irrelevant. Consequently, no purpose could be served by permitting an offer of proof if the intent were only to demonstrate the incompetence of the medical experts.

However, all testimony by medical experts under all circumstances is not irrelevant. While several federals circuits caution against a competence review that would result in a never-ending process with one expert reviewing the competence of a previous expert ad infinitum, these cases in no way preclude the post-conviction testimony of those experts who testified at trial when that testimony is relevant to a constitutional claim of ineffective assistance of counsel. *See Har-*

---

10. The *Raines* court ultimately concluded that the absence of the excluded testimony did not require reversal since the record contained enough of the excluded evidence to enable a legitimate determination on appeal. *Raines,* slip op. at 7.

11. In *Goad,* a capital case, the Supreme Court relied on its holding in *Farmers–Peoples Bank v.*

*Clemmer,* 519 S.W.2d 801 (Tenn.1975), a civil case. That decision was based on Rule 43.03 of the civil procedure rules which outlines a procedure for offers of proof in jury and non-jury cases. 519 S.W.2d at 804. The Court held that the procedure outlined in the rule and the case "obtains in criminal cases as well as in civil actions." 707 S.W.2d at 853.

*ris v. Vasquez,* 913 F.2d 606 (9th Cir.1990); *Clisby v. Jones,* 907 F.2d 1047, 1049 (11th Cir.1990); *Silagy v. Peters,* 905 F.2d 986, 1012 (7th Cir.1990). The expert testimony may be relevant to establish counsel's alleged deficient performance and to establish that prejudice resulted from the deficiency.

In this case, the trial court stated, in its written order excluding the testimony, that appellant intended to show only that he was provided ineffective assistance by these witnesses and, therefore, his lawyers were ineffective for relying on them. We agree with appellant that the trial court took too narrow a view of the claim, which alleged additionally that counsel was ineffective in the use, preparation, and presentation of the expert testimony.

Consequently, the excluded testimony is not obviously incompetent or per se irrelevant. Testimony of what the lawyers did or did not do, provide, or present may well establish deficient performance. The ability of the experts to provide adequate service given counsel's action or inaction may establish deficient performance as well. Moreover, testimony as to the complete findings of the experts and whether those were fully and adequately set forth for the jury during both the guilt and penalty phases may be essential to establish prejudice resulting from any deficiency.

We find that the inadmissibility of the testimony of these medical experts is not readily apparent from the record. Since the testimony is not obviously incompetent or irrelevant, the court should have allowed counsel to make the requested offers of proof. Absent a record of the proposed testimony, we are unable to say that the exclusion was harmless.

In light of the disposition of appellant's issue regarding recusal, we need only say that, at a subsequent hearing, the testimony of the medical experts to the extent it is relevant should be admitted. Should the court exclude certain portions, offers of proof shall be allowed in accordance with Rule 103.

## II. Recusal

■ Appellant contends that the trial judge has developed a personal bias against appellant and that the judge decided some of the factual issues and the ultimate result prior to hearing any evidence or argument. In support of his position that the judge was personally biased because of his views on capital punishment and post-conviction proceedings, appellant points to a number of statements made by the judge.

1. Prior to ruling against the stay of execution scheduled for May 2nd, the judge said, "Just a minute. I'll take it under advisement till May the 3rd."

2. On the day the petition for relief was filed, the trial court noted, "[A]s I said when I spoke to the Rotary Club some few months ago, the best way to give them bed space—I can give them fifty-seven beds tomorrow, if they'll just execute some of these people that are already in line for it."

3. After denying the stay, the trial judge stated, "They better hope the governor answers his phone. Or that it's not out of order."

4. In referring to Sedley Alley, the court said, "That's unusual. He's never been cooperative with anybody."

The statements quoted in paragraphs one, two, and three occurred on April 25, 1990, the day the petition was filed. On Thursday, April 26, 1990, after appointing counsel, the trial court set the matter for an evidentiary hearing on Monday, April 30, 1990, over the objections of appellant's counsel.[12] Since the trial transcript was thirty-four volumes and was filed with the deputy clerk of the Court of Criminal Appeals in Jackson, counsel argued that he would be unable to prepare for an evidentiary hearing in such a short time. Moreover, he would be unable to confer with his client.[13]

---

12. Judge Jones of this court who granted a stay of execution in response to appellant's Rule 9 appeal held that the denial of the stay and the hearing schedule constituted "a palpable abuse

of discretion ... violative of the Law of the Land provision of the Tennessee Constitution."

13. Judge Jones' order granting the stay of execution required the trial court to continue the hear-

Appellant contends that the following statements and facts demonstrate that the trial court had predetermined factual issues in this case prior to hearing any evidence on the matter.

1. Before reading appellant's pro se petition, the trial judge said, "The Court views this petition simply as some way to delay his execution and obviously that's what it is. And that's fine. But I don't—I just don't see the need to set it off for months and months and months."

2. In discussing the necessity for hearing testimony from the trial experts, the court said, "The court's view of this is, is simply that the number of psychologists and psychiatrists on each side, and some took no position for or against, that this was adequately explored, and I will deny it."

3. With respect to the preparedness of defense counsel, the trial court stated, "I know how much time they put into this thing. I know exactly what they were doing.... They were as prepared as they needed to be ...

 Mr. Jones and Mr. Thompson have never been as prepared as they were on this case."

4. With respect to allegations of the petition, "But from the Court's own knowledge at trial, many of these are not founded. When you compare it with the transcript, some of the things that these post-convictions say counsel failed to do, they did in fact do." [14]

5. After the evidentiary hearing began, appellant's counsel wanted to go forward with expert proof. Before any proof was introduced, the Court said, "[T]he totality of the circumstances is that they did exactly, as a group what you're saying that wasn't done.... And, these doctors conferred as a group, together, about Mr. Alley. It was done exactly, what you're saying wasn't done, was done, as a group."

6. In response to counsel's argument that Dr. Battle should be permitted to testify at the evidentiary hearing, the court responded, "What do you think a man with his ego would say? Listen, I know exactly."

In addition to alleging bias and prejudice, appellant contends that the trial judge failed to respect and comply with the law as required by Canon 2 of the Code of Judicial Conduct.[15] Tenn.Sup.Ct.R. 10. Appellant cites the trial judge's refusal to grant a stay of execution in compliance with Tennessee Code Annotated Section 40–30–109(b) as indicative of this disrespect. Appellant alleges that further disrespect is demonstrated by the trial judge's response to this court's stay and continuance order:

> Oh, great. Wonder if [Judge Jones] would like to handle a four page calendar this morning? You know, those are the guys that come down off of the mountain after the battle and shoot the wounded.

The state argues that recusal is required only if a judge's ability to preside impartially can reasonably be questioned. In this case, the state contends, the issues raised by appellant contain no reasonable basis to question the impartiality of the trial judge.

In the Anglo–American system of justice, the ideal for a judge is one who is "independent of governmental, political, social, economic, or other predisposing influences. The judge can accordingly approach the decision of any question in a case guided solely by legal knowledge and judicial experience and temperament." Charles W. Wolfram, *Modern Legal Ethics* 980 (1986). Although this ideal is one that is difficult to achieve, it is a fundamental principle of due

---

ing for a reasonable time to allow counsel to prepare. A piece-meal evidentiary hearing was held on March 1, March 15, April 5, April 26 and April 29, 1991.

**14.** Comments described in numbered paragraphs 1, 2, 3, and 4 were made prior to any evidentiary hearing.

**15.** Canon 2 of the Code of Judicial Conduct provides in part:

A Judge Should Avoid Impropriety and the Appearance of Impropriety in All His Activities

A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

process that a judge presiding at trial "must be sufficiently neutral and free of preconceptions about the factual issues to be able to render a fair decision." *Id.* at 988. Many years ago, the Tennessee Supreme Court stated:

[I]t is of immense importance, not only that justice shall be administered ..., but that [the public] shall have no sound reason for supposing that it is not administered.

*In re Cameron,* 126 Tenn. 614, 151 S.W. 64, 76 (1912). If the public is to maintain confidence in the judiciary, it is required that cases be tried by unprejudiced and unbiased judges. 46 Am.Jur.2d "Judges" § 166 (1969). *See Roberts v. Bailar,* 625 F.2d 125, 129 (6th Cir.1980).

▬▬▬ When a motion to recuse is made, a judge should grant the motion whenever his or her "impartiality might reasonably be questioned." Code of Judicial Conduct, Canon 3(C), Tenn.Sup.Ct.R. 10, *State v. Jimmy D. Dillingham,* No. 03C01–9110–CR–319, 1993 WL 22155 (Tenn.Crim.App., Knoxville, Feb. 3, 1993). Tennessee, like many jurisdictions, employs an objective rather than a subjective standard. Thus, while a trial judge should grant a recusal whenever the judge has any doubts about his or her ability to preside impartially, *Lackey v. State,* 578 S.W.2d 101, 104 (Tenn.Crim.App.1978), *cert. denied* (Tenn.1979), recusal is also warranted when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.[16] *State v. Cash,* 867 S.W.2d 741 (Tenn.Crim.App.1993).

While *Lackey v. State* might imply the use of a subjective standard,[17] the Tennessee Supreme Court in 1912 adopted an objective standard. In an eloquent opinion by Justice Neil, the Supreme Court emphasized not only that justice be administered, but that there be no appearance that it is not administered. 151 S.W. at 76. *See Leighton v. Henderson,* 220 Tenn. 91, 414 S.W.2d 419, 421 (1967) (quoting *Cameron* with approval).

We have no quarrel with *Lackey.* When judges doubt their ability to preside impartially or believe that their impartiality is reasonably subject to question, recusal is appropriate. However, pursuant to the lan-

---

**16.** *See Ham v. State,* 540 So.2d 805 (Ala.Crim. App.1988) (no reasonable basis to question judge's impartiality); *Giralt v. Vail Village Inn Assoc.,* 759 P.2d 801 (Colo.App.1988) (court must eliminate every semblance of reasonable doubt as to its impartiality); *LaBow v. LaBow,* 13 Conn. App. 330, 537 A.2d 157 (1988) (controlling standard is whether reasonable person who is aware of all circumstances would question impartiality); *Scott v. United States,* 559 A.2d 745 (D.C.App.1989) (appearance of partiality is sufficient); *Weber v. State,* 547 A.2d 948 (Del.Super.1988) (disqualification required when impartiality might reasonably be questioned); *Love v. State,* 569 So.2d 807 (Fla.App.1990) (ex parte communications violates appearance of impartiality); *Isaacs v. State,* 257 Ga. 126, 355 S.E.2d 644 (1987) (fact that judge's impartiality may reasonably be questioned is sufficient for disqualification); *People v. DelVecchio,* 129 Ill.2d 265, 135 Ill.Dec. 816, 544 N.E.2d 312 (1989) (guiding principle is whether average person, acting as judge, could not hold nice, clear, and true balance between state and accused); *State v. Strayer,* 242 Kan. 618, 750 P.2d 390 (1988) (question whether facts create a reasonable doubt not in judge's or litigant's mind but in mind of a reasonable person with knowledge of all the facts); *Pierce v. Charity Hosp. of Louisiana at New Orleans,* 550 So.2d 211 (La.App.1989) (facts must show that observer could reasonably perceive that court was biased); *Boyd v. State,* 321 Md. 69, 581 A.2d 1 (1990) (test is whether reasonable person knowing and understanding all the facts would recuse judge); *Olson v. Olson,* 392 N.W.2d 338 (Minn.App.1986) (where circumstances give bona fide appearance of bias judge should recuse); *Rutland v. Pridgen,* 493 So.2d 952 (Miss.1986) (recusal warranted if reasonable person would harbor doubts about impartiality); *Commonwealth v. Lemanski,* 365 Pa.Super. 332, 529 A.2d 1085 (1987); *State v. Neeley,* 748 P.2d 1091 (Utah, 1988); *State v. Brown,* 177 W.Va. 633, 355 S.E.2d 614 (1987); *but see Smith v. State,* 535 N.E.2d 1155 (Ind.1989) (movant must establish actual bias); *Mourad v. Automobile Club Ins. Ass'n,* 186 Mich.App. 715, 465 N.W.2d 395 (1991) (actual prejudice must be shown); *State v. American T.V. and Appliance of Madison, Inc.,* 151 Wis.2d 175, 443 N.W.2d 662 (1989) (disqualification not mandatory merely because judge's impartiality can reasonably be questioned by someone other than the judge).

**17.** *Lackey* states: "While a trial judge should recuse himself whenever he has any doubt as to his ability to preside impartially in a criminal case or whenever he believes his impartiality can reasonably be questioned, the trial judge here had no doubt of his ability to preside fairly." 578 S.W.2d at 104.

guage of Tennessee's Supreme Court in *Cameron* and *Leighton* and in accordance with sound ethical principles and the standard set forth in our Code of Judicial Conduct, a trial judge must consider a motion to recuse objectively as well as subjectively.

Since the standards a judge should apply in determining whether recusal is required have not been extensively discussed in Tennessee case law, we look to the law of other jurisdictions to assist us in clarifying this issue. Since 1974, Section 455 of Title 28, United States Code has contained language similar to that found in Canon (3)(C):

> (a) Any justice, judge or magistrate ... of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

28 U.S.C.A. § 455(a) (1974) (emphasis added). Federal cases construing this language have held that "[t]he standard now is objective. It asks what a reasonable person knowing all the relevant facts would think about the impartiality of the judge." *Roberts v. Bailar*, 625 F.2d 125, 129 (6th Cir.1980). A court should examine the facts alleged by the movant and consider "whether assuming the truth of the facts alleged, a reasonable person would conclude that a particular judge is biased or prejudiced against a particular defendant." *United States v. Baker*, 441 F.Supp. 612, 616 (M.D.Tenn.1977). *See also United States v. Adams*, 722 F.Supp. 408, 412 (W.D.Tenn.1989) (facts must convince a reasonable person that personal bias exists).

■ While the words "bias" and "prejudice" are central to the determination of whether a recusal should be granted, neither term is defined in Tennessee case law as it relates to the issue of recusal. Generally the terms refer to a state of mind or attitude that works to predispose a judge for or against a party. 46 Am.Jur.2d "Judges" § 167 (1969). Other jurisdictions have elaborated on that decision.

A Missouri court has defined "prejudice" necessary to require recusal as

> [T]he attitude of personal enmity towards the party or in favor of the adverse party to the other's detriment. It is not the mere possession of views regarding the

law or the conduct of a party or of his counsel. Prejudice is in the personal sense rather than in the judicial sense. Prejudice refers to a mental attitude or a disposition of the judge towards a party: either a hostile feeling or spirit of ill-will against one of the litigants, or a favoritism toward one of them.

*State ex rel. Wesolich v. Goeke*, 794 S.W.2d 692, 697 (Mo.App.1990).

■ Not every bias, partiality, or prejudice merits recusal. To disqualify, prejudice must be of a personal character, directed at the litigant, "must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from ... participation in the case." *Id.; see also United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966); *Houston v. State*, 565 So.2d 277 (Ala.Crim.App.1990).

■ Personal bias involves an antagonism toward the moving party, *Baker*, 441 F.Supp. at 616, but does not refer to any views that a judge may have regarding the subject matter at issue. 46 Am.Jur.2d "Judges" § 167 (1969). Impersonal prejudice resulting from the judge's background experience does not warrant disqualification. *Goeke*, 794 S.W.2d at 697. If the bias is based upon actual observance of witnesses and evidence given during the trial, the judge's prejudice does not disqualify the judge. *Jack Farenbaugh and Son v. Belmont Const. Inc.*, 240 Cal.Rptr. 78, 82, 194 Cal.App.3d 1023, 1032 (1987). However, if the bias is so pervasive that it is sufficient to deny the litigant a fair trial, it need not be extrajudicial. *Baker*, 441 F.Supp. at 617.

■ Adverse rulings by a trial court are not usually sufficient grounds to establish bias. *State v. Jimmy D. Dillingham*, No. 03C01–9110–CR–319, 1993 WL 22155 (Tenn. Crim.App., Knoxville, Feb. 3, 1993). Rulings of a trial judge, even if erroneous, numerous and continuous, do not, without more, justify disqualification. *Riva Ridge Apartments v. Robert G. Fisher Co.*, 745 P.2d 1034, 1037 (Colo.App.1987). *See also Tackett v. Jones*, 575 So.2d 1123 (Ala.Civ.App.1990); *Band v.*

*Livonia Associates,* 176 Mich.App. 95, 439 N.W.2d 285 (1989).

 Often parties allege that comments made by the judge demonstrate bias or prejudice. An expression of opinion of the merits of the case prior to hearing the evidence is indicative of bias. *Kail v. State,* 528 N.E.2d 799, 804 (Ind.App.1988). Remarks which suggest that the judge has taken a position favorable or unfavorable to a party also indicate bias. *LaBow v. LaBow,* 13 Conn.App. 330, 537 A.2d 157, 164 (1988); *Brown v. St. George Island, Ltd.,* 561 So.2d 253, 257 (Fla.1990) (judge who refused to admit affidavit stating, "I wouldn't believe him anyway," should be disqualified). Remarks indicating a judge's personal moral conviction or which "reflect prevailing societal attitudes" are insufficient alone to mandate disqualification. *United States v. Norton,* 700 F.2d 1072, 1076 (6th Cir.1983); *State v. Hawk,* 688 S.W.2d 467, 472 (Tenn.Crim. App.1985); *State v. Bobby Andrew Higdon,* No. 89–41–III, 1990 WL 26772 (Tenn.Crim. App., Nashville, Mar. 15, 1990). Any comments made by the trial court must be construed in the context of all the facts and circumstances to determine whether a reasonable person would construe those remarks as indicating partiality on the merits of the case. *Id.; see also United States v. Adams,* 722 F.Supp. at 411–412.

 When a trial court's comments indicate that the judge has prejudged factual issues, Tennessee courts have required disqualification. "In the trial of any lawsuit the judge must be careful not to give an expression to any thought, or to infer what his opinion would be in favor or against either of the parties in the trial." *Leighton,* 414 S.W.2d 419, 420 (Tenn.1967).[18] In *Leighton,* the Tennessee Supreme Court reversed and remanded for new trial a case in which the trial court stated, among other things, "I don't care what proof is in the record, if the Governor doesn't pardon this man, I am going to grant the petition...." *Id.* The *Leighton* court quoted with approval language in *In Re Cameron:*

> Beyond question it is not according to due course of law to compel a man over his protest to try his case before a judge who has already decided it, and has announced that decision in advance of the hearing. It is equally true that such compulsion is a denial of justice.

*Id.* at 421 (quoting *In re Cameron,* 126 Tenn. 614, 151 S.W. 64, 77 (1912)). The comments must reflect more than insensitivity and lack of sympathy on the part of the judge. *State v. Bobby Andrew Higdon,* No. 89 41–III, 1990 WL 26772 (Tenn.Crim.App., Nashville, March 15, 1990).[19] Prior knowledge of facts about the case is not sufficient in and of itself to require disqualification. *Baker,* 441 F.Supp. at 618.

 In the case before us, it is not clear from the trial court's Order Denying Petition for Recusal whether the judge considered whether his impartiality might reasonably be questioned under an objective standard.[20] The trial court concluded only that there was no compelling reason to transfer the petition to another court. When considering a motion to recuse, a trial court must consider more than whether or not the judge has a personal bias against the movant. In *Cameron,* the Tennessee Supreme Court stated not only that "justice shall be administered, but that [the public] shall have no sound reason for supposing that it is not administered." 126 Tenn. at 658, 151 S.W. at 76 (emphasis added). To maintain public confi-

---

18. Courts in other jurisdictions have made similar holdings. *See e.g. Kail v. State,* 528 N.E.2d 799 (Ind.App.1988); *Boyd v. State,* 79 Md.App. 53, 555 A.2d 535 (1989); *Norton v. State,* 755 S.W.2d 522 (Tex.App.1988).

19. However, if such remarks are pervasive and accompanied by prejudicial judicial conduct, they may constitute bias or prejudice. *Baker,* 441 F.Supp. at 619.

20. In the order, the trial court found that post-conviction cases can be transferred for certain reasons from one court to another, that Gerald Voss is the Keeper of Records for the Criminal Court's Office; that his statements were consistent with Justice William Rehnquist's views on habeas corpus proceedings in capital cases; that he would be able to judge Sedley Alley's credibility by the same standards the court would judge any other witness; and that the court's "light-hearted" comments were made while relaxing after the proceedings were over.

dence, courts must avoid the appearance of partiality as well as partiality itself.

Thus, based on the standards we have articulated, we must determine whether the facts demonstrate that a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's ability to rule impartially on the merits of the case.

While we could remand this case to enable the trial judge to evaluate the potential appearance of partiality in this case, we deem that procedure inefficient. We have carefully read the record and considered the points raised. We are mindful of the hindrances encountered by trial judges whose trial dockets often become saturated with post-trial petitions, many of which require days of complicated testimony. We are not callous to their appropriate efforts to dispense justice more swiftly. Moreover, we do not question in the least the judge's intentions in this cause or his determination, from a subjective, personal viewpoint that recusal was not necessary. Nonetheless, applying the objective standard required by our Code of Judicial Conduct, we deem recusal appropriate in this case in order to avoid the public appearance of partiality.

We, consequently, remand this case for transfer to another judge who will conduct a new hearing in accordance with the statutes and this opinion.

TIPTON, J., concurs.

DWYER, J., not participating.