IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 8, 2016

**IN RE: SAMUEL P.**

**Interlocutory Appeal from the Juvenile Court for Shelby County**
**No. Y0740     William A. Peeler, Special Judge**

_____

**No. W2016-01592-COA-T10B-CV – Filed August 31, 2016**

_____

This accelerated interlocutory appeal arises from the trial court's denial of a motion for recusal filed by a father in a custody proceeding. After carefully reviewing the trial court's ruling pursuant to the de novo standard of review required under Tennessee Supreme Court Rule 10B, we affirm the decision of the trial court denying the motion for recusal.

**Tenn. S. Ct. R. 10B Interlocutory Appeal as of Right; Judgment of the Juvenile Court Affirmed and Remanded**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and JOHN W. MCCLARTY, J., joined.

Brice Moffatt Timmons, Memphis, Tennessee, for the appellant, Vincent P.

Rachael Emily Putnam, Memphis, Tennessee, for the appellee, Cynthia P.

**OPINION**

**I. FACTS & PROCEDURAL HISTORY**

Vincent P.[1] ("Father") and Cynthia P. ("Mother") were in a dating relationship that ended in November 2011. Weeks after the relationship ended, Mother discovered that she was pregnant. She timely notified Father of the pregnancy and the expected due date of July 2012. Relations between the parties deteriorated, and when Mother was in her seventh month of pregnancy, Father filed a petition to establish paternity alleging that he was the fit and proper parent to have custody of the child. Two days after being served

_____

[1]It is the policy of this Court to use only the first name and last initial and, in some cases, just the initials of the parties involved in juvenile court actions to protect the privacy of the children involved.

with the petition, Mother went into preterm labor and gave birth to the child, who was ten and one-half weeks premature, on May 3, 2012. After a six-week stay in the neonatal intensive care unit, the child was discharged from the hospital weighing only four pounds. The parties have battled for custody of the child ever since.

Because both parents are attorneys who routinely practice in the juvenile court of Shelby County, Judge William Peeler, the juvenile court judge in Tipton County, was appointed as special judge to preside over the case on August 8, 2012. The parties filed numerous petitions and litigated countless issues over the next three years. According to Judge Peeler, this was "one of the most bitter, contentious, and litigious cases" he had seen during his 27-year tenure on the bench. The case was finally tried over the course of seven days between July and October 2015. On or about March 9, 2016, the trial court entered an order that contained numerous rulings adverse to Father. Father was found guilty of one count of criminal contempt and six counts of civil contempt. The court found unequivocal proof that Father is unable to make joint decisions with Mother. In fact, the court found that when Mother made any request of Father pertaining to the minor child, "Father went out of his way to do the opposite." It found that Father intentionally undermined Mother's ability to make decisions. As a result, the court named Mother as the sole decision-maker for all medical, educational, extracurricular, and religious decisions for the minor child. It also reduced Father's parenting time somewhat in order to provide the child with greater stability and consistency due to the child having special needs. The trial court also found that Father, whose law practice includes tax preparation, purposefully concealed his financial information for three years and failed to produce adequate documentation to establish his income for child support purposes. Accordingly, the trial court imputed income to Father, for the purpose of setting child support, in the amount of $10,000 per month. It ordered him to begin paying temporary child support to Mother of $600 per month, and it directed the parties to submit proposed child support worksheets to the trial court within thirty days to enable the court to determine both arrearages and the monthly child support award going forward.

Before the child support issues were resolved, on April 15, 2016, Father filed a motion for recusal of Judge Peeler. He amended his motion on May 19, 2016. Father asserted that some of Judge Peeler's rulings over the course of the proceedings, when viewed collectively, would cause a reasonable person to conclude that he lacked impartiality. Specifically, Father complained that (1) two petitions he filed were never heard, while the trial judge heard and considered petitions filed by Mother; (2) the trial judge failed or refused to hold a hearing on child support that would enable Father to present proof of Mother's income; and (3) the trial judge's clerk or assistant allegedly stated to an attorney in April 2015 that Father makes a large amount of money. On July 22, 2016, Judge Peeler entered a written order denying Father's motion for recusal.

2

Father timely filed a petition for an accelerated interlocutory appeal of the order pursuant to Tennessee Supreme Court Rule 10B. This Court directed Mother to file an answer to the petition for recusal appeal. Having reviewed the parties' filings and supporting documents, we deem oral argument unnecessary.

## II. STANDARD OF REVIEW

When reviewing an appeal pursuant to Tennessee Supreme Court Rule 10B, we limit our review to whether the trial court erred in denying the appellant's motion for recusal. *Williams by & through Rezba v. HealthSouth Rehab. Hosp. N.*, No. W2015-00639-COA-T10B-CV, 2015 WL 2258172, at *5 (Tenn. Ct. App. May 8, 2015) (*no perm. app. filed*). We do not review the merits or correctness of the trial court's other rulings. *Duke v. Duke*, 398 S.W.3d 665, 668 (Tenn. Ct. App. 2012). "[W]e review the denial of the motion for recusal under a de novo standard of review." *Id.* (citing Tenn. Sup. Ct. R. 10B § 2.06).

## III. DISCUSSION

At the outset, we note Mother's argument that Father's Rule 10B petition is fatally flawed because he failed to submit an affidavit in support of his motion for recusal. We acknowledge that Father's motion for recusal is not accompanied by a separate affidavit. However, he signed the motion and had it notarized with the following statement, "I, J. Vincent [P.], being first duly sworn, make oath that the foregoing is true to the best of my knowledge, information and belief." Rule 10B provides that a recusal motion "shall be supported by an affidavit under oath *or a declaration under penalty of perjury on personal knowledge* and by other appropriate materials." Tenn. Sup. Ct. R. 10B, § 1.01 (emphasis added). The sworn statement in Father's motion satisfies this requirement.

We now examine the merits of Father's motion for recusal. The party seeking recusal bears the burden of proof. *Williams*, 2015 WL 2258172, at *5; *Cotham v. Cotham*, No. W2015-00521-COA-T10B-CV, 2015 WL 1517785, at *2 (Tenn. Ct. App. Mar. 30, 2015) (*no perm. app. filed*). "[A] party challenging the impartiality of a judge 'must come forward with some evidence that would prompt a reasonable, disinterested person to believe that the judge's impartiality might reasonably be questioned.'" *Duke*, 398 S.W.3d at 671 (quoting *Eldridge v. Eldridge*, 137 S.W.3d 1, 7-8 (Tenn. Ct. App. 2002)). When reviewing requests for recusal alleging bias, "it is important to keep in mind the fundamental protections that the rules of recusal are intended to provide." *In re A.J.*, No. M2014-02287-COA-R3-JV, 2015 WL 6438671, at *6 (Tenn. Ct. App. Oct. 22, 2015), *perm. app. denied* (Tenn. Feb. 18, 2016). "The law on judicial bias is intended

3

'to guard against the prejudgment of the rights of litigants and to avoid situations in which the litigants might have cause to conclude that the court had reached a prejudged conclusion because of interest, partiality, or favor.'" *Id.* (quoting *Bean v. Bailey*, 280 S.W.3d 798, 803 (Tenn. 2009)).

The terms "bias" and "prejudice" usually refer to a state of mind or attitude that works to predispose a judge for or against a party, but not every bias, partiality, or prejudice merits recusal. *Watson v. City of Jackson*, 448 S.W.3d 919, 929 (Tenn. Ct. App. 2014) (citing *Alley v. State*, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994)). "'Even though the judge is expected to have no bias at the beginning of the trial, he must, perforce, develop a bias at some point in the trial; for the decision at the conclusion of the trial is based upon the impressions, favorable or unfavorable, developed during the trial.'" *Id.* at 933 (quoting *Spain v. Connolly*, 606 S.W.2d 540, 544 (Tenn. Ct. App. 1980)). To merit disqualification, the prejudice must be of a personal character, directed at the litigant, and stem from an extrajudicial source resulting in an opinion on the merits on some basis other than what the judge learned from participation in the case. *Id.* at 929. "A trial judge's opinions of the parties or witnesses that are based on what he or she has seen at trial are not improper and 'generally do[ ] not warrant recusal.'" *Id.* at 933 (quoting *Neuenschwander v. Neuenschwander*, No. E2001-00306-COA-R3-CV, 2001 WL 1613880, at *11 (Tenn. Ct. App. Dec. 18, 2001)). Consistent adverse rulings may lead a party to wish for another trial judge, but they do not provide a basis for requiring the trial judge's recusal from the case. *Runyon v. Runyon*, No. W2013-02651-COA-T10B, 2014 WL 1285729, at *10 (Tenn. Ct. App. Mar. 31, 2014). Adverse rulings usually are not sufficient to establish bias. *Duke*, 398 S.W.3d at 671 (citing *State v. Cannon*, 254 S.W.3d 287, 308 (Tenn. 2008)). "'Rulings of a trial judge, even if erroneous, numerous and continuous, do not, without more, justify disqualification.'" *Id.* (citing *Alley*, 882 S.W.2d at 821).

We have reviewed Father's asserted grounds for recusal pursuant to the de novo standard required by Rule 10B and conclude that Father has failed to establish that the trial court's impartiality may reasonably be questioned or that the trial court has an impermissible bias or prejudice concerning Father.

Father's first assertion is that the trial judge "consistently declined" to conduct evidentiary hearings on petitions filed by Father but considered the petitions filed by Mother. In his motion for recusal, Father noted two petitions he filed that allegedly went unresolved. The first was a petition for contempt filed against Mother in November 2012, three months after Judge Peeler was appointed to the case, in which Father alleged that Mother denied him visitation one weekend by traveling out of town. In his Rule 10B petition on appeal, Father stated, without elaboration, that on December 10, 2012, Judge

Peeler "decided not to hear" the petition for contempt and "instead held a hearing on a temporary parenting schedule." However, Father did not provide this Court with a transcript or order from the December 10, 2012 hearing. In response to Father's 10B petition, Mother provided this Court with a letter from Father's counsel to Mother's counsel prior to the December 10, 2012 hearing, in which Father's counsel stated that the upcoming hearing was for the court to adjudicate the petition for contempt *and* to establish a temporary parenting plan. In the letter, Father's counsel indicated that he had inadvertently failed to serve Mother with the petition for contempt, and he asked whether Mother would waive formal service. Mother also provided this Court with a transcript of Judge Peeler's oral ruling from the December 10, 2012 hearing, which reveals that Judge Peeler granted Father's request for overnight parenting time with the child but never mentioned the issue of contempt in its oral ruling.

Even assuming for the sake of argument that the trial judge "decided not to hear" the contempt petition on that date, for whatever reason, the record contains nothing to suggest that Father objected to the trial court's December 10, 2012 decision or sought thereafter to have the contempt petition reset for hearing.[2] In his motion for recusal filed in the trial court, Father asserted that his contempt petition was never heard "despite Father's requests that it be set for hearing." In contrast to Father's position, however, Judge Peeler's July 22, 2016 order denying Father's motion for recusal stated that Father's 2012 contempt petition was resolved by subsequent orders of the court and had not been mentioned in years. We do not have the entire record before us to verify whether the 2012 contempt petition was in fact resolved by subsequent orders. Nonetheless, the portion of the record that is before us suggests that the 2012 contempt petition, even if unresolved, had not been mentioned or pursued in years. Father's Rule 10B petition does not point to anything in the record to the contrary.[3] Nothing suggests

---

[2] Father was represented by three different attorneys over the course of the proceedings.

[3] In expedited appeals under Rule 10B, the only record the appellate court generally has is the record provided by the appellant with his or her petition. *Trigg v. Trigg*, No. E2016-00695-COA-T10B-CV, 2016 WL 1730211, at *2 (Tenn. Ct. App. Apr. 27, 2016) (*no perm. app. filed*); *Johnston v. Johnston*, No. E2015-00213-COA-T10B-CV, 2015 WL 739606, at *1 (Tenn. Ct. App. Feb. 20, 2015). Rule 10B requires the appellant's petition on appeal to "be accompanied by a copy of the motion and all supporting documents filed in the trial court, a copy of the trial court's order or opinion ruling on the motion, and a copy of *any other parts of the trial court record necessary for determination of the appeal*." Tenn. Sup. Ct. R. 10B, § 2.03 (emphasis added).

In his Rule 10B petition, Father states that he also filed a motion to dismiss the contempt petition Mother filed against him, and he claims that the trial court failed to address this motion as well. He also suggests that other rulings Judge Peeler made over the course of the proceedings demonstrated bias. However, the limited record before us contains nothing to support these arguments, and Father failed to raise any issue concerning these other rulings in his motion for recusal before the trial court. As a result of these deficiencies, we have not addressed the additional rulings in this opinion. *See McKenzie v. McKenzie*, No. M2014-00010-COA-T10B-CV, 2014 WL 575908, at *6 n.3 (Tenn. Ct. App. Feb. 11, 2014) (declining to address an additional allegation of bias raised in a petition to this Court but not

that Father sought to have his 2012 contempt petition heard during the seven days of trial in 2015 or at any other time. In fact, prior to trial, Judge Peeler entered an order setting the specific trial dates and listing four petitions filed by Mother that would be heard on those dates. Father apparently took no action to bring to the court's attention an unresolved contempt petition from 2012. Accordingly, our review of the record on this issue simply does not prompt a reasonable, disinterested person to believe that the trial judge's impartiality might reasonably be questioned or that he intentionally refused to hear Father's contempt petition.

The second petition filed by Father that allegedly went unresolved was an emergency petition for injunctive relief regarding a medical procedure for the parties' child. This petition is not included in the record on appeal, but according to Father's Rule 10B petition, he filed the emergency petition for injunctive relief on February 2, 2016, seeking to enjoin Mother from authorizing a surgery to treat the child's cerebral palsy without obtaining a second opinion. This emergency petition was filed after the seventh and final day of trial but before the entry of the trial court's written order. In response to Father's 10B petition, Mother's counsel provided this Court with email correspondence between the attorneys regarding Father's emergency petition for injunctive relief. These emails indicate that on February 2, 2016, Father's counsel advised Mother's counsel of the filing of the emergency petition and informed her that he intended to present the petition to the court the following day. On February 3, Mother's counsel advised Father that the surgery that was the subject of Father's emergency petition was cancelled by the surgeon due to Father's rude telephone calls and objections to the surgery. Mother's counsel asked whether Father still intended to pursue his petition in light of the cancellation of the surgery. Father's counsel responded that, due to the cancellation of the surgery, "the emergency nature of our Petition has abated and we will not need to travel to Tipton County to request injunctive relief." He indicated that if Mother agreed to certain conditions, "we will not need to have this Petition heard," but if she did not, Father would request a date for a hearing "in the near future." According to Mother, Father never set the petition for hearing.

On or about March 9, 2016, the trial court entered its written order from the trial. In the order, the trial court acknowledged the filing of Father's emergency petition for injunctive relief but dismissed the petition as moot because the trial court also ruled, in the same order, that Mother would be the sole decision-maker for all medical decisions for the child. On appeal, Father argues that the issue was not moot because the trial court had not entered its written order vesting Mother with sole decision-making authority when Father filed his petition. However, the issue before us is not whether the trial

included in the motion for recusal presented to the trial judge, as review under Rule 10B is limited to the trial court's denial of the recusal motion).

court's ruling on mootness was correct. The only question before this Court is whether the trial court's decision evidences improper bias or prejudice. *Marcum v. Caruana*, No. M2012-01827-COA-10B-CV, 2012 WL 3984631, at *7 (Tenn. Ct. App. Sept. 11, 2012). We cannot say that it does.

Father also argues, in relation to this issue, that Mother's counsel inappropriately contacted Judge Peeler via email and relayed inaccurate facts to him outside the record. Father attached Mother's counsel's email to his Rule 10B petition on appeal. The email is dated January 14, 2016. It begins with the phrase "Dear Judge Peeler," but it is *jointly* addressed to the email addresses for Judge Peeler and for Father's counsel. The text of the email states, "By copy of this email I am advising [Father's counsel] of this communication with the Court." Mother's counsel stated that she was writing to Judge Peeler and to Father's counsel on an emergency basis due to a situation that needed immediate attention from the court. She advised the trial court that the parties' child was scheduled to undergo surgery for a hernia repair on Monday, January 18, 2016, that the hospital's surgery center had contacted Mother earlier that day (Thursday, January 14) to advise her that Father was attempting to cancel the surgery, and due to the dispute, the surgeon was unwilling to perform the surgery absent a court order. Mother's counsel also advised the trial court of the separate surgery scheduled for the following month to treat the child's cerebral palsy. Mother asked the trial court to enter an order *sua sponte* enjoining and restraining Father from obstructing or interfering with the child's medical care. She apologized for addressing the issue by email but stated that it was necessary given the emergency nature of the situation and the surgery scheduled for the following Monday.

We discern no basis for recusal of Judge Peeler based on counsel's email. Even if this email was an ex parte communication, recusal would not be required. An ex parte communication is a "communication between counsel and the court when opposing counsel is not present." *Black's Law Dictionary* (10th ed. 2014). The Code of Judicial Conduct addresses ex parte communication in Canon 2, Rule 2.9, which provides that "[a] judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties or their lawyers, concerning a pending or impending matter," except under certain circumstances inapplicable here. However, the Rule does not state that recusal is required if the judge receives an ex parte communication. Instead, it provides that "[i]f a judge receives an unauthorized ex parte communication bearing upon the substance of a matter, the judge shall make provision promptly to notify the parties of the substance of the communication and provide the parties with an opportunity to respond." *Id.* "Generally, an *ex parte* communication requires recusal only where it creates an appearance of partiality or prejudice against a party so as to call into question the integrity of the

7

judicial process." *In re A.J.*, 2015 WL 6438671, at *6 (citing *Runyon*, 2014 WL 1285729, at *9). Recusal is required when a reasonable " 'person in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.'" *Id.* (quoting *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564-65 (Tenn. 2001) (quoting *Alley v. State*, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994)).

Father does not argue that this communication was concealed from him, as the email clearly lists his attorney as a recipient along with the trial judge. Nor does he argue that he was not given an opportunity to respond in like manner. In fact, Mother provided this Court with a lengthy email from Father, also dated Thursday, January 14, 2016, in which he responded directly to Judge Peeler with numerous documents attached and copied Mother's attorney. There is no indication that the trial judge granted the injunction sought by Mother in the email or otherwise acknowledged either email. Most importantly, the email from Mother's counsel does not create an appearance of partiality or prejudice against Father *on the part of the trial judge*. Accordingly, this communication provides no basis for recusal.

The next issue Father raises is whether the trial court demonstrated improper impartiality by refusing to hold a hearing on child support thereby denying him the opportunity to present proof regarding Mother's income. On appeal, Father provided this Court with one page from the transcript of the seven-day trial. It contains a discussion by Judge Peeler and Father's counsel about possible dates for a child support hearing, and Judge Peeler explained his intention to wait until he announced a decision on parenting time, then to address the issue of child support. In the March 9, 2016 trial order, Judge Peeler resolved the parties' parenting schedule but specifically reserved the issue of child support for future determination. He directed the parties to submit proposed child support worksheets to enable the court to set child support and to calculate the arrearages owed. In his motion for recusal, Father complained that he had expected the trial court to hold an additional hearing on the issue of child support, and as a result, he had not been afforded an opportunity to present evidence regarding Mother's income or to cross-examine her on that issue. However, we believe Father's asserted fears about the adequacy of the evidentiary basis for a child support order are premature. Although the March 9, 2016 order found Father in contempt for purposefully concealing his financial information and imputed income to *him* based on the lack of reliable information, the trial court specifically reserved the issue of child support and made no finding regarding Mother's income.[4] Before the child support issue was resolved, Father filed his motion

---

[4] We reiterate that the correctness of the trial court's finding of contempt and imputation of income are not subject to review in this 10B appeal.

for recusal. The trial court's order denying the motion for recusal stated, "It is a total misstatement that the Court has refused to hold further hearings on the Issue of child support." Again, we conclude that the record does not reveal any improper impartiality by Judge Peeler with regard to this issue.

Father also claims that impartiality was demonstrated by a statement allegedly made by Judge Peeler's clerk or administrative assistant. According to Father, on April 29, 2015, a certain Shelby County lawyer appeared in the Tipton County Juvenile Court on an unrelated matter and had a conversation with Judge Peeler's assistant. At that time, the assistant allegedly mentioned that Judge Peeler was hearing a matter involving two Shelby County attorneys and was aware that "the Attorney CPA" made a large amount of income. Even though the assistant did not mention any names, and Father is not a CPA, the Shelby County lawyer concluded that the assistant was referring to Father. The Shelby County lawyer offhandedly mentioned the comment to Father later that week, but Father thought nothing of it. Father claims that he did not consider this statement as indicative of bias until the trial court made adverse rulings against Father on financial matters in March 2016. In his April 2016 recusal motion, Father argued, for the first time, that the assistant's April 2015 statement indicated inappropriate bias. Father submitted an affidavit from the aforementioned Shelby County lawyer regarding the content of his conversation with Judge Peeler's assistant. In Judge Peeler's order denying the motion for recusal, he stated that he had conferred with his assistant and that his assistant had no recollection of ever having any conversation with the Shelby County lawyer who filed the affidavit. However, Judge Peeler concluded that even if the conversation did occur, the statement was so vague and ambiguous that it required speculation to be attributable to this particular case and further speculation as to any relevance to it. Judge Peeler stated that the alleged statement had no bearing whatsoever on the outcome of the case. Additionally, he concluded that Father's complaint about the alleged statement was not timely filed, as the statement was allegedly made in April 2015, and Father allowed another year of litigation to pass, including seven days of trial, before complaining about it. Judge Peeler found that Father and his attorneys had an obligation to immediately bring a potential impropriety to the court's attention, and he noted that a party can waive its right to question a judge's impartiality by attempting to engage in strategic conduct or waiting until an unfavorable ruling.

We agree with Judge Peeler's conclusion on this issue. "[A] party may lose the right to challenge a judge's impartiality by engaging in strategic conduct." *Duke*, 398 S.W.3d at 670 (citing *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998)). Courts frown upon manipulation of the impartiality issue to gain procedural advantage and will not permit litigants to refrain from asserting known grounds for disqualification in order to experiment with the court and raise an objection only when the result of a trial

is unfavorable. *Id.* In other words, parties are not allowed to silently preserve an allegedly prejudicial event as an "ace-in-the-hole" to be used in the event of an adverse decision. *Bracey v. Bracey*, No. M2014-01865-COA-R3-CV, 2016 WL 2585771, at *5 (Tenn. Ct. App. Apr. 26, 2016). "'Thus, recusal motions must be filed promptly after the facts forming the basis for the motion become known, and the failure to assert them in a timely manner results in a waiver of a party's right to question a judge's impartiality.'" *Duke*, 398 S.W.3d at 670 (quoting *Kinard*, 986 S.W.2d at 228). Father admits in his Rule 10B petition that he became aware of the assistant's comment to the Shelby County lawyer during the same week the comment was made -- in April 2015. Father did not allege any impropriety concerning the statement until April 2016, after seven days of trial and an unfavorable written order. We agree with Judge Peeler's conclusion that Father waived his right to question the judge's impartiality based on this statement because Father failed to raise the issue promptly after he became aware of the facts.

Father also suggests that language used by Judge Peeler in the order denying the motion for recusal demonstrates further impermissible bias. For example, Father points to Judge Peeler's statement that this was one of the most bitter, contentious, and litigious cases he had seen and that "most of which . . . was [Father's] doing." However, Judge Peeler's statements in the order simply reflect his opinion of Father based on his observation throughout this case. Judges inevitably form opinions about both parties during the course of litigation, and those opinions are not always positive. *Marcum*, 2012 WL 3984631, at *7. "Judicial remarks that are 'critical or disapproving of, or even hostile to, counsel, the parties, or their cases ordinarily do not support a bias or partiality challenge.'" *Krohn v. Krohn*, No. M2015-01280-COA-T10B-CV, 2015 WL 5772549, at *10 (Tenn. Ct. App. Sept. 22, 2015), *perm. app. denied* (Tenn. Oct. 15, 2015) (quoting *McKenzie*, 2014 WL 575908, at *4).

> Given the adversarial nature of litigation, trial judges necessarily assess the credibility of those who testify before them, whether in person or by some other means. Thus, the mere fact that a witness takes offense at the court's assessment of the witness cannot serve as a valid basis for a motion to recuse. If the rule were otherwise, recusal would be required as a matter of course since trial courts necessarily rule against parties and witnesses in every case, and litigants could manipulate the impartially issue for strategic advantage, which the courts frown upon. See *Kinard*, 986 S.W.2d at 228.

*Davis*, 38 S.W.3d at 565. If bias is based on the actual observation of witnesses and evidence given during the trial, the judge's prejudice does not disqualify the judge. *Alley*, 882 S.W.2d at 821. Generally, "any alleged bias must arise from extrajudicial sources

10

and not from events or observations during the litigation." *In re A.J.*, 2015 WL 6438671, at *5 (quoting *McKenzie*, 2014 WL 575908, at *3). Father does not allege that Judge Peeler has any personal prejudice against him or developed a prejudice based on facts from a source other than his involvement in this case.[5] We recognize that if "bias is so pervasive that it is sufficient to deny the litigant a fair trial, it need not be extrajudicial." *Alley*, 882 S.W.2d at 821. However, if the bias is alleged to stem from events occurring in the course of the litigation, the party seeking recusal has a greater burden to show bias and must demonstrate that bias is so pervasive that it is sufficient to deny the litigant a fair trial. *McKenzie*, 2014 WL 575908, at *3. The evidence in this case simply does not rise to the level of demonstrating an impermissible pervasive bias.

Finally, we note Father's assertion that the trial judge should have held a hearing on the motion for recusal. However, nothing in Rule 10B requires a trial judge to hold a hearing on a recusal motion. Rule 10B provides that "[t]he procedures set out in this Rule shall be employed to determine whether a judge should preside over a case." Tenn. Sup. Ct. R. 10B. It requires the petitioner to file a written motion for recusal "supported by an affidavit under oath or a declaration under penalty of perjury on personal knowledge and by other appropriate materials." *Id.* at § 1.01. Rule 10B states that upon the filing of a recusal motion, "the judge shall act promptly by written order and either grant or deny the motion." *Id.* at § 1.03. Father cites no authority for his position that the trial court was required to hold a hearing on the motion, and we are not aware of any.

## IV. CONCLUSION

For the aforementioned reasons, the decision of the juvenile court is hereby affirmed and remanded for further proceedings. Costs of this appeal are taxed to the appellant, Vincent P., and his surety, for which execution may issue if necessary.

_____
BRANDON O. GIBSON, JUDGE

---

[5]Father also complains that in the trial court's order denying the motion for recusal, when discussing the unresolved issue of child support, the trial court noted that Father had never filed his proposal as to child support, as ordered by the court, and "is again in contempt." Father asserts that this was an "inappropriate and unnecessary ruling." However, we do not construe the trial court's statement as a judicial finding of either civil or criminal contempt. It was apparently intended to demonstrate Father's continued refusal to abide by the orders of the court.