JAMES DANIEL GEYER, JR.,           )
                                   )
        Plaintiff/Appellant,       )
                                   )        Appeal No.
                                   )        01-A-01-9707-CH-00372
VS.                                )
                                   )        Coffee Chancery
                                   )        No. 96-158
KATHLEEN HELEN GEYER,              )
                                   )
        Defendant/Appellee.        )

**FILED**

**February 20, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE

APPEALED FROM THE CHANCERY COURT OF COFFEE COUNTY
AT MANCHESTER, TENNESSEE

THE HONORABLE GERALD L. EWELL, SR., CHANCELLOR

JOSEPH E. FORD
McBEE & FORD
17 So. College Street
Winchester, Tennessee 37398
        Attorney for Plaintiff/Appellant

ROBERT F. HAZARD
COPELAND, CONLEY & HAZARD
111 West Grundy Street
P. O. Box 176
Tullahoma, Tennessee 37388
        Attorney for Defendant/Appellee

AFFIRMED AND REMANDED

BEN H. CANTRELL, JUDGE

CONCUR:
TODD, P.J., M.S.
KOCH, J.

# O P I N I O N

This case arises from the divorce of James Geyer (the Husband) and Kathleen Geyer (the Wife). The trial court decreed the parties divorced and awarded custody of their minor child to the Wife. In addition, the court ordered that the Wife be designated the custodian of an account which was the sole property of the child. The Husband has brought this appeal before the Court of Appeals.

## I.

The first issue presented by the Husband is whether the trial court erred in finding as a matter of fact that the Husband had an obsessive and paranoid personality. On February 12, 1997, the court filed a Memorandum Opinion in response to several motions including a Motion for New Trial. In its opinion, the court made the following statement:

> At the outset the Court says and said from the Bench that there is some real concern about [the Husband's] personality, which the record shows, unfortunately, to be somewhat obsessive and paranoid. This is an unusual and undesirable situation but is not, in the opinion of the Court, to such a degree that it should affect his right to have said child in his physical custody as will be decreed.

Subsequent to this opinion, the Husband filed a motion to strike the foregoing language arguing that the finding was contrary to the proof put on during the trial. The Husband averred that the terms "obsessive" and "paranoid" have specific psychological and psychiatric meaning within those disciplines of study and that without expert testimony in this matter tending to show such character traits, "this court is not in a position to make such a finding." While the court refused to strike the finding, it did order that the language and any reference thereto be sealed with no portion to be revealed to the general public.

The Husband argues that the proof before the Court was that he was a good father and a professional at his work. In his brief, the Husband acknowledges that there was proof that he took issue with the Wife traveling for work and that he

confronted her supervisor in an attempt to stop her work-related travel. He also acknowledges that there was proof that he taped conversations with the Wife during the pendency of the divorce and hired private investigators to follow her. In addition, the proof showed that the Husband kept a pistol in the home for protection contrary to the Wife's wishes. He admits that he tapped the home phone line, explaining that he did so to monitor phone calls with his ex-wife. It is the Husband's position that none of these activities, taken singly or as a whole, can lead to the conclusion that he is paranoid and obsessive.

The Husband acknowledged that he had hired a private investigator to follow the Wife around their hometown as well as in Nashville and to Detroit on a business trip. The investigator questioned a counselor that the Wife was seeing in Nashville. The Husband stated that he had some concerns regarding the role this man was playing. The Wife testified that the Husband surreptitiously installed caller ID in their home which the Wife did not discover for some time. She said that the Husband would call her at work many times during the day intimating that he did not trust that she was really there.

Rule 13(d) of the Tennessee Rules of Appellate Procedure provides the appropriate standard of review:

> Unless otherwise required by statute, review of findings of fact by the trial court in civil actions shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise.

See *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997). To reiterate, the finding of fact at issue was that the Husband's personality is "somewhat obsessive and paranoid." After reviewing the record, we cannot say that a preponderance of the evidence is contrary to the trial court's finding. The Husband readily admits many of the incidents which support this finding regarding his personality. Moreover, such a determination was relevant to the issues with which the court was faced such as the

custody of the parties' minor child. While the Husband expressed concern that these terms have specific psychological and psychiatric meanings within those disciplines of study, they are also common adjectives by which non-professionals might describe persons. It is obviously in this sense that these terms were used by the court below. We find that the evidence does not preponderate against the finding that the Husband, at least for the time period involved, exhibited a personality which was "somewhat obsessive and paranoid."

## II.

In his second issue, the Husband contends that the court erred in changing the custodian of the parties' minor child's custodial account from him to the Wife. The parties had stipulated that this account was the separate property of the minor child. We review the trial court's decision to change the custodian of this account de novo without a presumption of correctness as none is given a trial court's conclusion of law. *Hamblen County Educ. Ass'n v. Hamblen County Bd. of Educ.*, 892 S.W.2d 428, 431 (Tenn. Ct. App. 1994).

The Husband asserts that the case of *Reymann v. Reymann*, 919 S.W.2d 615 (Tenn. Ct. App. 1995), stands for the proposition that the courts do not have the authority to make an order regarding the interest in any property of a child. We disagree. In *Reymann*, the trial court divested the interest of a father and his adult daughter in two annuities which the father and daughter jointly owned and vested the same in the mother as trustee of a spendthrift trust for the benefit of the daughter. This court vacated the portion of the judgment affecting the daughter's property correctly reasoning as follows:

> So far as this record shows, the daughter is not a party to this suit, and neither the Trial Court nor this Court has any authority to make any order regarding her interests in any property. . . . It seems that the Trial Court has required the defendant to contribute his absolute property right in the

> annuities to a spendthrift trust to a daughter who is an adult, has graduated from college and, so far as this record shows, is legally competent. No authority is cited or known to this Court which authorizes a party to a divorce case to contribute to a trust fund for the benefit of a competent adult child.

*Id.* at 618. We find that *Reymann* is not authoritative as it rests on facts which are completely distinguishable from those in the case at bar. Specifically, the "child" there was a legally competent adult and the lower court's order did much more than change the custodian of the property at issue.

However, authority which is directly on point can be found in the Tennessee Code. Section 34-11-102(d) (1996) provides in pertinent part as follows:

> If the parents of a minor child are divorced, the court may award the guardianship of the property of the minor child to the parent who, in the court's judgment, would best serve the welfare of the minor child and the child's estate. The parent appointed guardian of the child's estate may, but does not have to be, the parent with legal custody.

The trial court is vested with clear authority pursuant to this statute to award the guardianship of property of a minor child to either parent when the parents divorce. In this case, the court determined that it would best serve the welfare of the minor child to appoint the Wife as custodian of the account, and based upon the record before us, we affirm this decision.

### III.

In his final issue, the Husband asserts that the trial court erred in denying his request to make an offer of proof regarding the changing of the custodian of the minor child's custodial account. The Husband made a post-trial motion "for the issuance of an order allowing the reopening of the proof in the divorce case with

regard solely to the issue of which party is to be designated custodian of the Waterhouse account of the minor child." As grounds for his motion, the Husband averred that "prior to trial he was assured that this issue in fact was not at issue at the trial and that he would remain the custodian of said account for the minor child of the parties. He would show that, at the trial of the case, he did not testify concerning where the money in that account came from or the fact that he had been custodian of the account and handled the account for the minor child of the parties by agreement of the parties." In addition, the Husband alleged that "in order to obtain proper appellate review of this Court's decision to change the custodian of that account for the minor child this proof should be allowed to be placed in the record." As stated, the Husband moved that he be allowed to make an offer of proof in the alternative.

Overruling the motion, the court examined all five of the references to the custodial account which were found in the trial transcript. The court stated that "upon consideration of these citations together with the entire record in this cause and weighing the capabilities and suitability of the parties relative to this matter the Court is satisfied with its ruling in this regard and deems no further proof necessary, nor is it deemed appropriate to reopen the proof and allow an offer to be made by [the Husband]. He had his opportunity to thoroughly litigate this matter for trial." This was the second time following the trial that the court addressed this issue for it had previously overruled a motion by the Husband to reconsider designation of the Wife as custodian of the child's account.

We must review two decisions made by the trial court, first its decision not to reopen the proof and next its decision not to permit an offer of proof. As for the former, it is well settled that a court's decision regarding the reopening of the proof for further evidence is within the discretion of the trial court, and unless it appears that the trial court's action has permitted injustice, its exercise of discretion will not be

disturbed on appeal. *Simpson v. Frontier Community Credit Union*, 810 S.W.2d 147, 149 (Tenn. 1991). We thus review this decision for an abuse of discretion. *Robertson County, Tenn. v. Browning-Ferris Indus. of Tenn., Inc.*, 799 S.W.2d 662, 665 (Tenn. Ct. App. 1990); *see Oliver v. State*, 348 S.W.2d 325, 327 (Tenn. 1961). The Husband's motion indicates that, given a second opportunity, he would have presented proof of the money's origin and of the fact that he was the sole custodian of the account by his wife's agreement. The five references to the custodial account found in the record do reveal that the Husband was primarily responsible for this account -- it is even a part of his testimony that the Wife agreed for him solely to handle the Waterhouse accounts. As such, this additional proof would have had little affect on the court's consideration of this issue, and therefore it is highly unlikely that its absence has permitted an injustice. Moreover, the trial court stated that its decision to designate the Wife as custodian followed a "weighing [of] the capabilities and suitability of the parties relative to this matter." As our opinion has heretofore revealed, there was ample proof from which the court could have formed opinions regarding the parties' capabilities and suitabilities. We therefore find that the court did not abuse its discretion in denying the Husband's request to reopen the proof.

Turning to the issue of the court's denial of the Husband's request to make an offer of proof, we first cite the rule regarding offers of proof as follows:

> (a) Effect of Erroneous Ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and . . .
>
> (2) Offer of Proof. In case the ruling is one excluding evidence, the substance of the evidence and the specific evidentiary basis supporting admission were made known to the court by offer or were apparent from the context.

Tenn. R. Evid. 103. With regard to this rule, the courts are clear that "[t]he general rule is that 'assuming an offer of proof has been seasonably made, it is error for the trial court to refuse to permit counsel to state what evidence he is offering.'" *Alley v. State*, 882 S.W.2d 810, 815 (Tenn. Crim. App. 1994) (quoting 89 A.L.R. "Offer of

Proof--Ruling--Error" § 2 at 283 (1963)). The problem with the application of this rule and its liberal interpretation to the instant case is that Rule 103, by its language, applies to rulings which admit or exclude evidence during trial. Its purpose is to ensure that excluded evidence be in the record in order for an appellate court to determine if the exclusion was in error. *Alley*, 882 S.W.2d at 816.

The case at bar is not a case about excluded evidence; rather it is a case in which the Husband, after three days of trial, sought to reopen the proof with evidence that could have been presented at trial. As we have found, the court did not abuse its discretion in not reopening the proof as the proffered evidence was not significantly different to that which was in the record. Under these circumstances, we find that the law does not compel that an offer of proof be permitted. Therefore, the trial court did not err in disallowing the Husband's offer of proof.

## IV.

In conclusion, we affirm the decision of the trial court in all respects. The Court did not err in finding that the Husband had an obsessive and paranoid personality. Nor was it error for the court to change the custodian of the parties' minor child's account from the Husband to the Wife. Finally, we find that the court did not err in denying the Husband's request to reopen the proof or to make an offer of proof. Remand this cause to the trial court for any further proceeding that may become necessary. Tax the costs on appeal to the appellant.

_____
BEN H. CANTRELL, JUDGE

CONCUR:

- 8 -

_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION


_____
WILLIAM C. KOCH, JR., JUDGE

- 9 -