IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
November 6, 2012 Session

## JOSEPH BRENNAN v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Sumner County**
**No. 395-2011  Dee David Gay, Judge**

**No. M2012-00187-CCA-R3-PC Filed December 4, 2012**

Petitioner, Joseph Brennan, pled guilty to two counts of incest and two counts of attempted rape of a child in Sumner County. As a result, he was sentenced to ten years for each attempted rape conviction and three years for each incest conviction. The trial court ordered the attempted rape convictions to run consecutively with one another but concurrently to the incest convictions, for a total effective sentence of twenty years in the Department of Correction. *State v. Joseph Brennan*, No. M2009-00895-CCA-R3-CD, 2010 WL 1425540, at *1 (Tenn. Crim. App., at Nashville, Apr. 9, 2010), *perm. app. denied*, (Tenn. Sept. 23, 2010). On direct appeal, Petitioner challenged the denial of an alternative sentence. *Id.* This Court affirmed Petitioner's sentence. *Id.* Petitioner filed a post-conviction petition in which he alleged that the sentencing judge was impartial. Petitioner also requested a new sentencing hearing and recusal of the trial court. The trial court denied the request for recusal. An amended petition was filed by Petitioner along with a second motion for recusal of the trial court. The trial court denied the motion for recusal and the petition for post-conviction relief. Petitioner appeals. After a review of the record and authorities, we determine that the post-conviction judge properly denied recusal and where the record indicates that Petitioner was sentenced by an impartial tribunal, properly denied post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

David L. Raybin, Nashville, Tennessee, for the appellant, Joseph Brennan.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel Harmon, Assistant Attorney General; Lawrence R. Whitley, District Attorney General; and Lytle Anthony James, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## *Factual Background*

Petitioner was charged with two counts of rape of a child and two counts of incest. Petitioner pled guilty to two counts of incest and two counts of attempted rape of a child. The factual basis for the indictment and resulting guilty pleas was relayed by the State at the sentencing hearing. Essentially, Petitioner and the victim were siblings by adoption. Petitioner and the victim lived in Pennsylvania prior to moving to Tennessee. Petitioner started sexually abusing the victim when she was ten and he was nineteen years of age. The abuse began in 2004. It stopped for a time before beginning anew in 2007 and continuing until the charges herein were brought. Petitioner had yelled at the victim, attempted to penetrate the victim, performed cunnilingus on the victim, and forced the victim to perform fellatio. Petitioner's parents were aware that something was going on between Petitioner and the victim, putting into effect a "safety plan" to prevent the victim from being alone with Petitioner. He was able to work around the safety plan. Petitioner was sent for a time to Montana to a clinic but Petitioner continued to abuse pornography and even had a sexual encounter with a near stranger during this time. Petitioner was diagnosed with a sexual disorder and "paraphilia" involving incest. When questioned, Petitioner was cooperative with authorities. Petitioner testified at the sentencing hearing.

> He said that he and his siblings had been adopted at different times from India by his parents, who then lived in Pennsylvania. Before being adopted as a six-month-old, he had lived in Calcutta. [The Petitioner] was twelve years old when his parents adopted the victim; he and his other siblings, Ryan, Katelyn, and Koli, had all been adopted before her. At the time, [the Petitioner] was unsure why his parents kept adopting children, and he resented the victim's presence.
>
> Around this time, [the Petitioner] began to have "issues with sex"; he found his father's pornography collection and used it when masturbating. He also started to view pornography on the internet. He was very stressed because his parents were present so infrequently; when pornography became insufficient to relieve his stress, he abused the victim. He did not recognize at the time that his actions were wrong, but said at sentencing that he was being selfish and regretted his actions.
>
> After a few months, [the Petitioner] told his sister Koli that he had abused the victim. Koli told [the Petitioner]'s mother, who confronted [the

Petitioner], told authorities, and separated him from the victim with a safety plan. He also began to see a counselor, although he did not receive counseling tailored to his sexual offense. [the Petitioner's] counselor and his parents told him that his actions were wrong, but that did not have a significant impact on him at the time.

[The Petitioner] continued to masturbate for the next few years, but viewed very little pornography. He entered Catholic school and became very active in the Boy Scouts; the structure imposed by these organizations helped him. He was able to become an Eagle Scout, the highest rank in the Boy Scout program and one attained by only about five percent of all Boy Scouts. He admitted, however, that he had consensual sex with another Boy Scout during this time.

[The Petitioner] and his father moved to Tennessee in June 2007; the rest of the family joined them in August 2007, after the victim and Ryan had completed their school year. Over that summer, [the Petitioner] "got bored." He had not seen a counselor in some time; he also did not know anyone in Tennessee and felt like an outcast.

He therefore relapsed and abused the victim again on three occasions. On the first occasion, he "dry-humped" the victim, while both were clothed, until he ejaculated. Before the second occasion, [the Petitioner] had again been viewing pornography; he went to the victim and rubbed against her until he ejaculated into his clothes. On the third occasion, he removed both his pants and the victim's pants, rubbed against the victim, and briefly performed cunnilingus on her. He then directed her to bend over the toilet and tried to insert his penis into her vagina. Unable to do so, he rubbed his penis against her genitals until he ejaculated. [the Petitioner] said he never used physical force on the victim.

[The Petitioner]'s parents were out of the house on each of these occasions. [the Petitioner] felt guilt after the first and second occasions but could not stop; after the third time, however, he felt extremely guilty and told Ms. Skuba and his old counselor about his behavior.

[The Petitioner]'s mother and his counselor found the clinic in Montana and sent him there. He stayed for four months in a general addiction program. He learned that he had a problem, and learned to think of his little sister as the victim of his acts. On April 22, 2008, after [the Petitioner] had hired an

attorney, he returned to Tennessee and turned himself in to police. He was released on bond and began living with a friend. He saw Dr. Moore for an evaluation and continued to have therapy over the phone with Elisha Brea, a therapist he had seen in Montana.

He also hired Dr. Finlayson, who suggested attendance at SA meetings. [The Petitioner] testified that he had been referring only to masturbation when he told Dr. Finlayson that he "wasn't really quite ready to make the change." [The Petitioner] said that, at the time of sentencing, he did not have a computer and did not view pornography on the internet or elsewhere.

He said that he abused the victim because she was the first available female. He felt ashamed and said he should not have abused the victim. [The Petitioner] requested treatment for the purpose of discerning the source of his sexual desires and how to avoid committing any further abusive acts. He said he had committed no illegal acts since being released on bond and was willing to submit to a curfew, GPS monitoring, polygraph exams, or any other conditions in order to avoid prison.

On cross-examination, [the Petitioner] admitted that he attended SA sessions irregularly because they originally occurred at 6:30 a.m., which was "too early" for him. He also admitted that he directed the victim to perform fellatio on him in Pennsylvania and on the first occasion of abuse in Tennessee. He also made the victim watch pornography in Pennsylvania. He testified about other sex acts he had committed at various times, including masturbating on webcam, meeting an anonymous forty-year-old man in a parking lot after a conversation with him on the internet, and sex with an anonymous woman met at a swimming pool. The victim testified at sentencing that he had abused the victim on three or four occasions in Pennsylvania, but acknowledged that he had told Dr. Moore he had done so ten times. He said he lied to Dr. Moore about the number because he was uncomfortable with her. [The Petitioner] admitted to having occasional anger issues, and agreed that Ryan and the victim thought he was a bully.

*State v. Joseph Brennan*, 2010 WL 1425540, at *4-5.

At the conclusion of the sentencing hearing, the trial court denied a sentence of split confinement, finding a sentence of confinement necessary to provide a deterrent to others and to avoid depreciating the seriousness of the offense. *Id.* at *7. Additionally, the trial court

found that Petitioner was still a risk to society and would be most amenable to treatment in incarceration. *Id.* at *8. At the conclusion of the sentencing hearing, the trial court stated:

> You've got a history of abuse with your own sister spanning five or six years or fifty percent, not continuous. You've got a history of deviant criminal conduct. And in light of this, how do we avoid depreciating the seriousness of the event. What is more serious than a brother trying to rape or possibly raping because he cannot penetrate her because she's so young his own sister. Not one time but more than one time in two different states across this country. What's more serious than that. And what's more serious than protecting children in a dysfunctional home. I call it dysfunctional because if you cannot protect your child in the home after something has been revealed of this magnitude in Pennsylvania, then you are totally dysfunctional.

> So, how can we avoid depreciating the seriousness of this when that little girl has nobody to stand up for her. She can't even be in this courtroom today.

> . . . .

> I have to consider whether or not confinement is particularly suited to provide effective deterrence to others likely to commit similar offenses. I mean what is more important than deterring rape of a five-year old or an eleven-year old. Nothing. Nothing other than killing somebody. That's about as serious as it gets. The deterrent of that cannot be greater.

> Lastly, the sentence imposed shall be no greater than deserved for the offense committed.

> I find, based on all that I have stated here, . . . , that I really question whether or not you appreciate the consequences, serious consequences for your illegal behavior. I don't know because of how things have gone on in the past because of the way that we handle cases, you got an attorney when you were a juvenile of this and that, I don't know if you really appreciate the concept of being punished. Being punished has been replaced with excuses or explaining behavior. The focus seems to have shifted from what you did, raping your own sister, into turning on the circumstances surrounding the action. She was there, I had pornography, I was stressed out. Guess what. That's not going to change. You're going to be stressed out every day of your life.

. . . .

And for the reasons that I have stated and for the protection of society, I feel that there is no alternative, but your sentence will be in the penitentiary for twenty years. They will be served consecutively to each other and this will be served in the Tennessee Department of Correction.

I have stated this as fully and completely as I know how to do why this sentence should be given and, again, it's because of the mandates under the law and the fact that I need to consider the deterrence, the seriousness of the crime, and the risk to society.

On direct appeal from his sentence, this Court determined that "the trial court properly considered [Tennessee Code Annotated section 40-35-103] . . . and found that a sentence of confinement was necessary for deterrence, to avoid depreciating the seriousness of the [Petitioner's] offenses, and because [Petitioner] was not sufficiently amenable to treatment outside of confinement and was therefore likely to reoffend." *Id.* The supreme court denied permission to appeal on September 23, 2010.

After permission to appeal was denied by the Tennessee Supreme Court on September 23, 2010, Petitioner filed a motion pursuant to Rule 35 of the Tennessee Rules of Criminal Procedure to reduce or modify his sentence on January 19, 2011. We were unable to locate the motion in the record on appeal. However, a transcript of a hearing that the trial court held on the motion in February of 2011 appears in the record. At the hearing, the trial court denied the motion because it concluded it lacked jurisdiction over the sentence by virtue of the length of time from the date of sentencing and because the motion "had no merit."

After the trial court ruled on the motion, the District Attorney informed the trial court that Petitioner was a scout leader of the trial court's son's Boy Scout troop and suggested that there was potential for an appearance of impropriety. The trial court commented that it "obviously . . had no idea, . . . that he was involved with my son at all [at the time of the guilty plea or at the time of sentencing]." The trial judge insisted that, had he known this information, he would have recused himself from the case.

Subsequently, on June 8, 2011, Petitioner filed a petition for post-conviction relief that forms the basis for this appeal. In the petition, Petitioner sought relief from his sentence because Petitioner was denied federal and state constitutional rights to an impartial tribunal based on the appearance of impropriety. Specifically, Petitioner noted the fact that the trial judge's son was a member of the Boy Scout troop of which Petitioner was a leader. The trial court filed a document on June 27, 2011, finding that the trial court had "no doubt" as to its

own impartiality. However, the trial court ruled that Petitioner presented a colorable claim for relief. In the order, the trial court ordered Petitioner to file an amended petition addressing waiver of the issue for failure to raise it prior to the post-conviction proceeding. The trial court filed an order specifically denying the motion for recusal on July 15, 2011.

An amended petition for post-conviction relief and an additional motion for recusal were filed by Petitioner on August 25, 2011. In the amended petition Petitioner reiterated the claims in his earlier petition. Petitioner also asserted that he had not waived any claims to relief because he did not become aware of the potential for bias until after his sentencing hearing. The accompanying motion for recusal sought recusal of the trial court.

The trial court again denied the motion for recusal and set the post-conviction petition for a hearing. At the post-conviction hearing, the trial court heard testimony from Petitioner's mother, Marie Brennan. She testified that Petitioner participated in the Boy Scouts for approximately twelve years in Pennsylvania and was an Eagle Scout. The family moved from Pennsylvania to Tennessee in 2007. Ms. Brennan recalled providing evidence about Petitioner's activities with the Boy Scouts to his trial attorney for mitigation purposes prior to the sentencing hearing. In April of 2008, Petitioner received a letter from the Boy Scouts organization informing him that his membership had been revoked. In January of 2010, Ms. Brennan emailed trial counsel when she received information about the fact that the trial judge's son may have been in the same Boy Scout Troop as Petitioner.

Trial counsel testified that he had absolutely no idea that the trial court's son was in the Boy Scouts when he used information about Petitioner's service in the organization and achievement of Eagle Scout status as an "accolade" in mitigation. Trial counsel recalled that the trial judge appeared "passionate" about the Boy Scout organization and seemed to "cross-examine[] [Petitioner] regarding his involvement in the Boy Scouts during the sentencing hearing." According to trial counsel, the Boy Scout issue "affected [the trial court's] judgment" and "influenced his decision making process considerably." Trial counsel acknowledged that he could not read the trial court's mind.

Trial counsel testified that he found out after sentencing that the trial judge's son was in the Boy Scout troop with Petitioner. Thereafter, at the hearing on the motions to modify the sentence, trial counsel informed the trial court of the situation for the first time. This hearing took place after the direct appeal in Petitioner's case but trial counsel felt that the "connection that [the trial judge] had with the Boy Scouts may very well have, you know, affected his ruling." Trial counsel commented:

> [W]hat is not reflected in the record of the sentencing hearing is the extreme amount and emotion that he injected into the sentencing hearing when he

-7-

basically cross-examined [Petitioner] regarding his involvement with the Scouts. Whether that had anything to do with his contact with Scouting in the past or his son, I don't know because I can't read his mind. But certainly [Petitioner's involvement with the Boy Scouts] influenced his decision making process considerably.

Petitioner testified that he never made the connection between the trial judge and his son during the guilty plea hearing or at sentencing. Petitioner thought that his involvement and success in Boy Scouts would actually help him at the sentencing hearing. Petitioner first learned of the possible connection between the trial judge and Boy Scouts after Petitioner was incarcerated. He sought his mother's help. Petitioner's mother was able to confirm that the trial judge's son was in the Boy Scout troop in which Petitioner had been an assistant Troop Leader. Petitioner felt that this could have influenced the judge's decision in some way. After reflecting, Petitioner recalled the trial judge's son being in his troop and recalled actually meeting the trial judge's wife. Petitioner testified that, had he known this prior to the sentencing hearing, he would have asked for a different judge.

At the conclusion of the testimony, the trial judge denied the petition for post-conviction relief. The trial judge confirmed that his son was in the troop and that his wife had met Petitioner on at least one occasion. The trial judge confirmed that he showed a lot of passion in the sentencing hearing but held the following:

> The facts are clear. The law is clear here that there is no such basis to require a new sentencing hearing. Therefore, the court respectfully denies Petitioner's request for a new sentencing hearing. Specifically finds that there is no constitutional violation of an unfair or partial tribunal and the request is respectfully denied.

Petitioner appeals from the denial of post-conviction relief.

*Analysis*
*Post-conviction Standard of Review*

On appeal, Petitioner insists that he was denied an impartial tribunal because the trial judge should have recused himself from the post-conviction hearing and because of the judge's "apparent and implicit bias at the sentencing hearing." The State disagrees.

The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. *See State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issue raised, we will afford those findings of fact the weight of a

jury verdict, and this Court is bound by the court's findings unless the evidence in the record preponderates against those findings. *See Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *Alley v. State*, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may not reweigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. *See State v. Honeycutt*, 54 S.W.3d 762, 766 (Tenn. 2001). However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

When deciding whether to grant a motion for recusal, a trial judge exercises his or her discretion. *Caruthers v. State*, 814 S.W.2d 64, 67 (Tenn. Crim. App. 1991). This Court may reverse the trial judge's decision only when the judge has clearly abused that discretionary authority. *State v. Cash*, 867 S.W.2d 741, 749 (Tenn. Crim. App. 1993). The judge should recuse himself or herself whenever the judge's "impartiality [could] reasonably be questioned." *Alley v. State*, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994) (quoting Code of Judicial Conduct, Canon 3(c) (now part of Tenn. Sup. Ct. R. 10, Canon 3(E)(1)). Furthermore, recusal is appropriate "when a person of ordinary prudence in the judge's position . . . would find a reasonable basis for questioning the judge's impartiality." *Id.* (footnote omitted). The trial judge must determine whether he or she has a subjective bias against the defendant and whether the trial judge's impartiality could reasonably be questioned under an objective standard. *State v. Connors*, 995 S.W.2d 146, 148 (Tenn. Crim. App. 1998).

Because Petitioner in this case pled guilty, the trial judge's knowledge of the facts of the case are irrelevant insofar as the guilt/innocence determination is concerned. As far as the sentence is concerned, the trial judge stated that he was not aware of Petitioner's involvement with his son's Boy Scout troop until after the sentencing took place. Additionally, the sentencing hearing was merely to determine the manner of service of the sentence as the plea agreement called for two, consecutive ten-year terms of imprisonment and two, concurrent three-year terms of imprisonment. As pointed out by the State, the trial judge mentioned Petitioner's involvement with the Boy Scouts a few times during sentencing, one of which was to note Petitioner's achievement of the rank of Eagle Scout. However, the trial judge seemed to rely heavily on the psychological information provided about Petitioner in making its sentencing decision. Additionally, the trial court based the denial of an alternative sentence, as recounted above, on the seriousness of the offense, the need for deterrence, and on Petitioner's lack of appreciation for the consequences of his conduct. This Court noted such on direct appeal. *Joseph Brennan*, 2010 WL 1425540, at *6-9. Moreover, the alleged bias complained of herein by Petitioner was not known to the trial court until after sentencing and the filing of the opinion of this Court on direct appeal. The trial judge's immediate response was, "You've got to be kidding me." Thereafter, the

trial judge determined after careful consideration that he did not need to recuse himself from the post-conviction matter. At the post-conviction hearing, the trial judge again considered the recusal issue and determined that he made all sentencing determinations prior to his knowledge of Petitioner's involvement with the Boy Scout troop. We can see no facts or suggestion herein that the trial judge based his sentencing decision on his personal knowledge of the case or bias because of Petitioner's involvement with the Boy Scouts. Thus, we conclude that the trial judge properly exercised his discretion when denying the petitioner's motion for recusal and, ultimately, properly denied post-conviction relief on the basis that Petitioner was denied an impartial tribunal. Consequently, this issue lacks merit and Petitioner is not entitled to relief.

*Conclusion*

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____
JERRY L. SMITH, JUDGE