IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 29, 2018

## BRIAN M. HASLETT ET AL. v. BARRY GREGORY ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 16-886-I   Claudia Bonnyman, Chancellor**
_____

### No. M2018-01952-COA-T10B-CV
_____

The defendants moved to disqualify the chancellor after the denial of their motion for summary judgment. As grounds for disqualification, the defendants submitted that the chancellor had violated the Code of Judicial Conduct in denying their motion for summary judgment and in not promptly entering an order on a motion to compel. After the chancellor's denial of the motion to disqualify, this accelerated interlocutory appeal followed. Because the motion identified no justifiable basis for the chancellor's disqualification, we affirm.

**Tenn. Sup. Ct. R. 10B Accelerated Interlocutory Appeal as of Right; Judgment of the Chancery Court Affirmed and Case Remanded**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which THOMAS R. FRIERSON II and ARNOLD B. GOLDIN, JJ., joined.

Eugene N. Bulso, Jr., Nashville, Tennessee, for the appellants, Barry A. Gregory; Billy G. Gregory; Estelle A. Gregory; Scott Stephens; and Priority Trust Services MCD Trust #7756372.

## OPINION

### I.

On August 9, 2016, in the Chancery Court for Davidson County, Tennessee, Brian M. Haslett and Tina G. Haslett filed suit against Barry Gregory; his parents Billy G. Gregory and Estelle A. Gregory; Scott Stephens; and Priority Trust Services MCD Trust #7756372.[1] As the chancery court later described, the suit arose from the plaintiffs

_____
[1] The suit also named as defendants S. Madison Roberts IV and Daphne M. Davis. References to

quitclaiming their home to a third-party in the face of an impending foreclosure/tax sale:

> The Plaintiffs were delinquent in their real property tax payments and their home was scheduled for the Clerk and Master tax sale. According to the Plaintiffs, shortly before the tax sale, the Defendant Barry Gregory persuaded them to sign a quitclaim deed conveying their property to the entity, "Priority Trust Services MCD Trust #7756372," without payment or other consideration. According to the Plaintiffs, they were also in default of their mortgage held by the Bank of America and serviced by the similarly named "Priority Trustee Services of TN, L.L.C." The Plaintiffs contend that they transferred their real property to Priority Trust Services MCD Trust #7756372 because Barry Gregory deceptively caused them to believe that he was associated with or represented Priority Trust Services of TN, L.L.C. and was speaking for the Bank of America. The Plaintiffs also contend that promises were made by Barry Gregory that they could remain in their home for the year and that he would take care of the mortgage. The deed that the Plaintiffs were persuaded to sign named an attorney, Daphne Davis, as the deed preparer with an address at the Bank of America Plaza. The deed included the term "FORECLOSURE #668732161405." Barry Gregory testified in his deposition that Daphne Davis did not prepare the deed to his trust, that he prepared the deed, and that he inserted a false foreclosure reference in the deed to mislead investors. Barry Gregory is a real estate investor who has purchased thousands of properties, some of them at tax sales. It appears that Mr. Gregory also buys properties from delinquent taxpayers before tax sales, hoping to generate profits from the transactions.

> Barry Gregory's parents, the Defendants Billy and Estelle Gregory, purchased the Plaintiffs' real property at the delinquent tax sale for an amount that the Plaintiffs contend, was about half of its market value. The Plaintiffs claim that their home was then sold for its market value, double the amount of the tax sale price.

> Priority Trust Services MCD Trust #7756372 then sought to be awarded approximately $134,000 in excess funds remaining after all taxes and interest were paid from the purchase funds. At the time of the sale, the delinquent tax statutes provided that excess funds are awarded to delinquent taxpayers. Thus, the Court awarded the excess funds to the Plaintiffs who then divided the money with Priority Trust Services MCD Trust and the Defendant purchasers in accordance with a written agreement. The Plaintiffs claim that in September 2015, after the agreement was executed

---

the defendants in this opinion exclude Mr. Roberts and Ms. Davis.

and the excess funds were divided, they learned that their mortgage servicer, Priority Trustee Services of TN, L.L.C., was not the Priority Trust Services, MCD Trust #7756372 to whom they conveyed their home. The Plaintiffs claim they also learned that neither the actual mortgage servicer Priority Trustee Services of TN, L.L.C. nor the Bank of America were involved in the transfer of the [sic] their home or in the division of the excess funds. Instead, the Plaintiffs learned that Barry Gregory was the sole owner of the trust.

The defendants think little of the suit. They question the motivations behind the suit.[2] And they question the suit's legal merit. According to the defendants, the plaintiffs signed a settlement agreement "resolving the very claims . . . asserted in . . . [the] Complaint." Additionally, they argue that their dealings with the plaintiffs do not come within the purview of the Tennessee Consumer Protection Act ("TCPA"), which forms the basis for some of the plaintiffs' claims.

The defendants moved for summary judgment. Among other things, the defendants argued that they were entitled to summary judgment because defendant Barry Gregory made no representations on which the plaintiffs relied, the parties executed a release that barred all of the asserted claims, the plaintiffs' dealings with the defendant did not "affect[] the conduct of any trade or commerce" so as to fall within the TCPA, and the plaintiffs' TCPA claims were time barred.

The chancery court denied the motion for summary judgment from the bench and instructed counsel for the plaintiffs to prepare a proposed order. The defendants claim that the court "provided no explanation or legal grounds for [its] decision." In particular, the defendants fault the court for "offer[ing] no analysis or grounds for denying defendant's [sic] Motion [for Summary Judgment] regarding, inter alia, plaintiffs' TCPA claim and conspiracy claim" and that its justification for not granting summary judgment on plaintiffs' fraud claim "had no relation to the evidence, the elements of that claim, or the defendants' argument."

Before the court could enter its order denying the motion for summary judgment, the defendants moved to disqualify the chancellor. As grounds for the motion to disqualify, the defendants accused the chancellor of violating the rules of the Code of Judicial Conduct, primarily in connection with the denial of summary judgment. *See* TENN. SUP. CT. R. 10. The defendants also cited a delay in the entry of an order on a motion to compel.

---

[2] According to the defendants, the plaintiffs' attorney induced the plaintiffs to file suit as a means to exact "a measure of revenge for what [the plaintiff's attorney] perceived to be the misfortune such defendants had caused him" from an earlier suit. We gave a brief description of the earlier suit in *Family Trust Servs., LLC v. Reo Holdings, LLC*, No. M2016-02524-COA-R3-CV, 2018 WL 2203216 at *1 (Tenn. Ct. App. May 14, 2018), *perm. appeal denied*, (Tenn. Sept. 13, 2018).

Specifically, with respect to their motion for summary judgment, the defendants alleged that the chancellor "blatantly violated [Tennessee] Rule [of Civil Procedure] 56.04's requirement that the court state the legal grounds upon which it denied defendants' Motion." According to the defendants, the chancellor's omission amounted to a violation of Rule 1.1 of the Code of Judicial Conduct, which requires a judge to "comply with the law." The defendants also accused the chancellor, in making her oral ruling on summary judgment, of misstating the deposition testimony of one of the plaintiffs. The defendants asserted that this misstatement violated the requirement under Rule 2.5 that a judge perform judicial duties competently.

The defendants also alleged that the chancellor failed to enter an order on an unopposed motion to compel, which had been pending over three months. They claimed that the motion sought "documents necessary to defend the claims asserted against defendants at trial." Again according to the defendants, the chancellor's failure to act on the motion to compel constituted another violation of Rule 2.5 in that the chancellor did not perform her judicial duties "promptly and diligently." Finally, the defendants submitted that "[a] person of ordinary prudence would conclude from these multiple violations of the Code of Judicial Conduct—all of which favor plaintiffs—that the Court is not unbiased, that is, that the Court wants the plaintiffs to win this case." As such, the defendants claimed Rule 2.11 required the chancellor's disqualification.

The chancellor denied the motion to disqualify in an order addressing each of the alleged violations of the Code of Judicial Conduct. On the motion for summary judgment, the chancellor noted that even an incorrect decision on the defendants' motion would not be a sufficient basis for disqualification. And she observed that there were disputed issues of material fact and allegations of fraud that made the case unsuitable for summary judgment. Any error in her characterization of the plaintiffs' testimony could be addressed at a trial on the merits. The chancellor also emphasized that an order on the motion for summary judgment had not been entered and that it was common for her to correct or modify a ruling by revising a proposed order or to reject a proposed order and to draft her own.

On the motion to compel, the chancellor explained that the proposed order compelling the documents was filed electronically and simply overlooked. The first time the defendants informed the court of their concerns over the delay in entry of the order was in the motion to disqualify. The chancellor commented that "[i]t would have been helpful if the Defendants' attorneys had notified the calendar clerk that they were waiting on the order" or made some mention of the matter at the hearing on summary judgment.

The defendants petitioned for an accelerated interlocutory appeal of the denial of their motion to disqualify. The defendants also moved this Court to stay the proceedings in the chancery court pending the disposition of the appeal. We denied the request.

4

## II.

### A.

Rule 10B of the Rules of the Supreme Court of Tennessee governs the procedure for "determin[ing] whether a judge should preside over a case." TENN. SUP. CT. R. 10B. The rule allows for an accelerated interlocutory appeal as of right from the denial of a motion for disqualification or recusal. *Id.* § 2.01. In an accelerated interlocutory appeal, our review is limited to the trial court's ruling on the motion for disqualification or recusal. *See id.*; *Duke v. Duke*, 398 S.W.3d 665, 668 (Tenn. Ct. App. 2012) ("[T]he only order we may review is the trial court's order that denies a motion to recuse."). We review a trial judge's ruling on a motion to disqualify de novo. TENN. SUP. CT. R. 10B, § 2.01.

In an accelerated interlocutory appeal, we may request an answer from the other parties and briefing. *Id.* § 2.05. We may also set oral argument. *See id.* § 2.06. After a review of the defendant's petition for recusal appeal and supporting documents, we have determined that an answer, additional briefing, and oral argument are unnecessary. Thus, we act summarily on the appeal. *See id.* § 2.05.

### B.

In Tennessee, litigants "have a fundamental right to a 'fair trial before an impartial tribunal.'" *Holsclaw v. Ivy Hall Nursing Home, Inc.*, 530 S.W.3d 65, 69 (Tenn. 2017) (quoting *State v. Austin*, 87 S.W.3d 447, 470 (Tenn. 2002)); *see also* TENN. CONST. art. VI, § 11. Under the Code of Judicial Conduct, a judge must "disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." TENN. SUP. CT. R. 10, Rule 2.11(A). "[T]he test for recusal is an objective one." *State v. Cannon*, 254 S.W.3d 287, 307 (Tenn. 2008). Recusal is required "when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564-65 (Tenn. 2001) (quoting *Alley v. State*, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994)). The decision to recuse is vested in the judge's discretion.[3] *State v. Hester*, 324 S.W.3d 1, 72 (Tenn. 2010).

To seek disqualification or recusal, a party must come forward with some evidence that would give a person of ordinary prudence in the judge's position a reasonable basis for questioning the judge's impartiality. *See* TENN. SUP. CT. R. 10B

---

[3] The defendants do not argue that recusal was mandatory under either Article 6, Section 11 of the Tennessee Constitution or Tennessee Code Annotated § 17-2-101 (2009). *See Hester*, 324 S.W.3d at 72.

§ 1.01 ("The motion [for disqualification or recusal] shall be supported by an affidavit under oath or a declaration under penalty of perjury on personal knowledge and by other appropriate materials."); *Davis v. Tenn. Dep't of Emp't Sec.*, 23 S.W.3d 304, 313-14 (Tenn. Ct. App. 1999) (on petition for rehearing). Here, the evidence relied on by the defendants is the denial of their motion for summary judgment, including the chancellor's ruling from the bench. To them, the oral ruling and the denial of summary judgment indicates bias on the part of the chancellor. *See* TENN. SUP. CT. R. 10, Rule 2.11(A)(1) ("[P]ersonal bias or prejudice concerning a party or a party's lawyer" are among the circumstances warranting recusal.). Near the end of their petition for recusal appeal, the defendants summarize their argument as follows:

> The key issue here is whether the trial court's summary judgment rulings would cause a person of ordinary prudence to question the trial court's impartiality. The answer plainly is yes. No impartial trial court could so flagrantly disregard the clear mandate of Rule 56.04 even after such mandate was called to her attention. No impartial trial court could rely on mere assertions in a pleading to defeat a summary judgment supported by undisputed evidence that contradicts the assertions in a complaint.[4]

The way the defendants frame the issue for this appeal demonstrates their fundamental misunderstanding of recusal. The defendants erroneously equate bias with what may or not be an error of law, denial of a motion that allegedly shows that there is no genuine issue as to any material fact and that the defendants are entitled to a judgment as a matter of law.[5] *See* TENN. R. CIV. P. 56.04. As our supreme court explained, "[a] trial judge's adverse rulings are not usually sufficient to establish bias." *Cannon*, 254 S.W.3d at 308. That is true "even if [the adverse rulings are] erroneous, numerous and continuous"; there must be something more to justify disqualification. *Alley*, 882 S.W.2d at 821; *see also Cannon*, 254 S.W.3d at 308.

The defendants have failed to show the something more that would be necessary to justify disqualification. Their claim of partiality relies solely on one adverse ruling, the denial of their motion for summary judgment. Determining whether that ruling was in error is beyond the scope of this proceeding. In sum, we are presented with no facts that would support the proposition that the denial of the motion for summary judgment

---

[4] We omit one case citation from the quoted passage.

[5] The defendants compounded their error in the court below by equating what may or may not be an error of law with a violation of the requirement of Rule 1.1 of the Code of Judicial Conduct. Most Rule 1.1 violations occur "when a judge violates a criminal law in his or her personal conduct," although the failure to follow "clear procedural rules of law" has also been found to be a violation. *In re Neely*, 390 P.3d 728, 747-48 (Wyo. 2017), *cert. denied sub nom. Neely v. Wyoming Comm'n on Judicial Conduct & Ethics*, 138 S. Ct. 639 (2018).

resulted from the chancellor's bias or prejudice against the defendants.

## III.

The facts asserted by the defendants did not require the disqualification of the chancellor. Thus, we affirm the denial of the motion for disqualification.

_____
W. NEAL MCBRAYER, JUDGE