IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 10, 2024

**JAMES TRAVIS DOVER v. HANNA NORRIS DOVER**

**Appeal from the Circuit Court for Sevier County**
**No. 23-CV-766       Adrienne Waters Ogle, Judge**

_____

**No. E2024-01523-COA-T10B-CV**

_____

This accelerated interlocutory appeal is taken from the trial court's order denying Appellant's motion for recusal. Because there is no evidence of bias that would require recusal under Tennessee Supreme Court Rule 10B, we affirm the judgment of the trial court.

**Tenn. Sup. Ct. R. 10B Interlocutory Appeal; Judgment of the Circuit Court Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which ANDY D. BENNETT and KRISTI M. DAVIS, JJ., joined.

Nicholas Warren Diegel and P. Edward Pratt, Knoxville, Tennessee, for the appellant, James Travis Dover.

Heather N. McCoy, Sevierville, Tennessee, for the appellee, Hannah Norris Dover.

**OPINION**

**I. Background**

Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C. ("Baker Donelson"), Plaintiff/Appellant's counsel of record in this case, is also counsel of record in a case pending in the Chancery Court for Sevier County, ***Kars, LLC et al. v. Ronald W. Ogle, et al.***, No. 25-5-106 (the "Kars Lawsuit"). In the Kars Lawsuit, Attorney Nicholas W. Diegel, a Baker Donelson shareholder, represents all six defendants, including Mr. Ronald W. Ogle

("Mr. Ogle").[1] Mr. Diegel is also one of the attorneys of record in this case.

On September 12, 2024, Judge Adrienne Waters Ogle was sworn in as a Circuit Court Judge for the 4th Judicial District. On the same day, the instant case (***Dover v. Dover***) was assigned to her docket. Prior to her appointment, Judge Waters Ogle practiced law with the firm of Green, Waters Ogle, and McCarter (the "Green Firm"). Attorney Travis D. McCarter, a member of the Green Firm, represents the plaintiffs in the Kars Lawsuit. The Kars Lawsuit arises from Mr. Ogle's purchase of real property in Sevier County, Tennessee from a co-defendant and includes claims for breach of a lease purchase option, tortious interference, and other common-law tort claims. The Kars Lawsuit plaintiffs seek compensatory and punitive damages in excess of $150 million. Because all parties to the Kars Lawsuit are well-known members of the community, the Chancellor for Sevier County recused himself at the case's inception, as did all remaining judges in the Circuit Court. The Kars Lawsuit recently was assigned to the Honorable John McAfee in the Circuit Court for the 8th Judicial District.

Jeannine Hurst Emory is Mr. Ogle's personal assistant and real estate manager. Ms. Emory's office is located in the building adjacent to the Green Firm. Specifically, Ms. Emory's office is located at 119 Court Avenue in Sevierville, and the Green Firm is located at 117 Court Avenue in Sevierville. Although the two addresses have separate front doors, an upstairs hallway connects the Green Firm and Ms. Emory's offices. A door, with a simple doorknob lock, provides access between the two offices. The facts giving rise to Appellant's petition for recusal largely arise from events outlined in Ms. Emory's affidavit filed in support of the petition. Therein, Ms. Emory avers, in relevant part:

> 7. I maintain at the Office all of Mr. Ogle's files and documents concerning his real estate matters, including zoning applications, surveys, site plans, correspondence, and contracts. I also maintain Mr. Ogle's personal and confidential medical records at the Office.
> 8. Importantly, I also maintain at the Office the real estate transaction files, pleadings and Mr. Ogle's legal files related to his ongoing legal proceedings. These documents include the attorney client communications with Mr. Ogle's lawyers, work product privilege protected documents and pleadings for [the Kars Lawsuit] currently pending in the Chancery Court for Sevier County, Tennessee . . . .
> 9. The opposing counsel in the Kars Lawsuit is Travis McCarter ("Mr. McCarter"), who is a lawyer and named owner of the [Green Firm]. His co-counsel are attorneys with the New York law firm of Kasowitz Benson Torres LLP (hereinafter collectively "Plaintiffs' Counsel").
> 10. The [Green Firm] offices . . . are located at 117 Court Avenue, Sevierville, Tennessee 37862, which is located in the adjacent building and

---

[1] There is no indication that Judge Waters Ogle and Mr. Ogle are related.

next door to my Office.

11. Mr. McCarter's law partner was Adrienne Waters Ogle ("Ms. Waters Ogle"), with whom I am well acquainted.

12. Ms. Waters Ogle knew that I occupied the Office and that we were neighbors. She would occasionally contact me to solicit votes for her law firm for local accolades. I would also occasionally send Ms. Waters Ogle referrals for potential clients.

13. I renovated the Office to add new flooring, a new roof, ceiling tiles, paint upgrades. . . . I also renovated the bathrooms in the Office, including new toilets and sinks. [The Green Firm] attorneys and staff would come to my Office to use my renovated bathrooms at times.

14. At one time, Ms. Waters Ogle commented that my renovations and decorations of the Office "looked good."

15. Ms. Waters Ogle would also occasionally receive mail that was addressed to me. This mail displayed my name and my address as 119 Court Avenue. 1 would retrieve this errantly delivered mail from Ms. Waters Ogle's firm.

16. Ms. Waters Ogle also knew of my professional relationship with Mr. Ogle. Mr. Ogle frequently visited my office and would park his vehicle displaying his name in the parking area beside the [Green Firm].

17. On October 6, 2023, I texted Ms. Waters Ogle and informed her that 1 would be handling all of Mr. Ogle's real estate matters going forward. She responded to that text. A true and correct copy of this text exchange is attached hereto as Exhibit 1.

18. For approximately the past year, intermittently, I have been in Arizona with Mr. Ogle where he has been receiving medical treatment. During this time, I frequently return to Tennessee to continue maintaining Mr. Ogle's legal and real estate matters.

19. I received a notification on my phone that the motion sensors for the security camera in the lobby of my Office had been activated on August 12, 2024, at 11:26 a.m. I didn't realize there was video recording of the August 12, 2024 motion until on or about September 1, 2024.

20. The security camera captures "bursts" or short clips of motion. I was able to recover three clips from the security camera from the morning of August 12, 2024.

21. All three videos show Mr. McCarter and Ms. Waters Ogle in my Office having a conversation with other individuals. One of the videos shows what appears to be the county identification for County Vice Mayor Bryan McCarter. The other individual present is believed to be Ms. Cyndi Pickel with the Sevier County Register of Deeds.

2. I had not given any of these individuals permission or authority to enter my Office.

23. The room in the Office where I maintain the files for Mr. Ogle's real estate matters and the Kars lawsuit are located just down the hall from the

lobby.

24. Mr. McCarter and Ms. Waters Ogle had the opportunity, outside of camera view, to access and view the confidential documents in my Office.

***

29. Mr. McCarter and Ms. Waters Ogle trespassed at the Office. Both Mr. Ogle and I have filed a police report with the Sevierville Police Department for criminal trespass and breaking and entering and that investigation remains pending.

30. There are only two means for accessing the Office: (1) the front door, which requires a key that only [my landlord] and I possess; or (2) a door adjoining [the Green Firm] on the upstairs floor.

31. Before departing for Arizona for the last time before August 12, 2024, I locked all doors for entry to the Office. The adjoining door upstairs has a knob lock that could easily be manipulated with a credit card or other narrow object.

32. I also set a security camera up at the top of the stairs with motion tracking. It was plugged in and operational the last time I departed for Arizona prior to August 12, 2024.

33. I never received a notification of motion from the upstairs security camera on August 12, 2024, which would have occurred if Mr. McCarter and Ms. Waters Ogle accessed my Office from the adjoining doors.

34. Shortly after August 12, 2024, I discovered that the upstairs security camera has been unplugged and moved.

35. I have never informed Ms. Waters Ogle, Mr. McCarter nor [my landlord] that I was vacating the Office.

36. I never gave [my landlord] or anyone else permission to access the Office on August 12, 2024. I certainly did not give permission to opposing counsel in the Kars Lawsuit or his law partner to have unsupervised access to Mr. Ogle's personal files, some of which pertain to the confidential subject matter of the Kars Lawsuit.

37. Upon my return to the Office, I observed that certain of Mr. Ogle's files had been manipulated or moved from the location in which I left them.

On September 19, 2024, Appellant filed a motion asking Judge Waters Ogle to recuse herself in the ***Dover*** case. In addition to Ms. Emory's declaration, Appellant also filed the declaration of attorney Diegel in support of the motion for recusal. In relevant part, Mr. Diegel stated that,

as lead Baker Donelson counsel for the Kars Lawsuit Defendants, I will be tasked with obtaining discoverable information from Judge Waters Ogle and almost certainly cross-examining her as an adverse witness [in the Kars

Lawsuit]. Depending on the outcome of the discovery, I may also be ethically required to report Judge Waters Ogle to the Board of Professional Responsibility based on the August 12, 2024 incident . . . .

Indeed, on September 19, 2024, the same day Appellant filed the instant motion for recusal, the Kars Lawsuit defendants filed a motion to disqualify plaintiffs' attorneys in that case.

On September 27, 2024, Judge Waters Ogle announced her ruling on the motion to recuse in this case. On the same day, Judge Waters Ogle entered her order denying recusal. In relevant part, Judge Waters Ogle held:

> Plaintiff's motion omits a very important fact—I do not know Plaintiff's attorney, Nicholas Diegel. I have never met, spoken to, or otherwise interacted with Mr. Diegel. The first time I learned of Mr. Diegel was when I read Plaintiff's motion for my recusal. In addition to having no prior relationship whatsoever with Mr. Diegel himself, 1 have never had any significant dealings with any attorney from the law firm of Baker Donelson. Plaintiff does not even attempt to argue I possess any actual bias or prejudice against Mr. Diegel or the law firm of Baker Donelson. And, since I do not know him and have no past dealings with his law firm, I can unequivocally state I have no personal bias or prejudice towards Mr. Diegel or the law firm of Baker Donelson. I have no doubt whatsoever about my ability to remain impartial at all times while presiding over this case.

In addition to her statement that she had no actual bias in the instant case, Judge Waters Ogle also addressed the appearance of bias from an objective standpoint and held that:

> Plaintiff's recusal motion has nothing to do with the present case. Plaintiff's motion is based on an unrelated case referred to in the motion as the "Kars lawsuit." According to the Plaintiff's motion, Mr. Diegel represents the defendants in the "Kars [L]awsuit" and Mr. McCarter, an attorney associated with my former law firm, is local counsel for the Plaintiffs.
> In the recusal motion, Plaintiff's attorney, Mr. Diegel, repeats a third-party's [*i.e.*, Ms. Emory's] allegations about this court related to the "Kars [L]awsuit" and then claims that because of the third-party's allegations there is an "acrimonious relationship" between this court and Mr. Diegel and/or the attorneys at Baker Donelson that creates "a reasonable basis for questioning" this court's ability to remain impartial regarding the present case. In order to make this leap, the Plaintiff's motion omits several crucial facts:
>
> • I do not know Mr. Diegel or any other attorney at the law firm of Baker Donelson.

• I did not represent the Plaintiffs in the Kars lawsuit.
• I performed no work on the Kars lawsuit.
• I have not communicated or interacted with Mr. Diegel or any other person regarding the Kars lawsuit.
• The allegations about this judge made by a third party and repeated by Plaintiff's attorney in the recusal motion were previously investigated by local law enforcement and the district attorney's office and were determined to be unfounded per the investigating officer's report dated September 13th, 2024.

Concerning the statements in the motion for recusal that Judge Waters Ogle might be called as a material witness in the Kars Lawsuit or that Mr. Diegel might be required to filed a complaint against Judge Waters Ogle with the Board of Judiciary, Judge Waters Ogle held that "the possibility that, at some point in the future, the attorneys at Baker Donelson might receive discovery responses in an unrelated case that may require them to file a complaint against this judge does not require recusal." Judge Waters Ogle concluded her order as follows:

> [N]o objective, disinterested person with knowledge of the facts would harbor any significant doubt about my impartiality in this case. It is not enough to suggest that somebody might think a trial judge would decide a case unfairly. The applicable standard is an objective one: what matters is whether an objective, fully informed lay observer would entertain significant doubt about the judge's impartiality. It is clear that no disinterested person armed with the facts—that is, knowing that the allegations in Plaintiff's motion to recuse have no relation to the present case or its litigants, that this judge does not know Mr. Diegel or any of the attorneys at the law firm of Baker Donelson, that this judge was not involved in the Kars [L]awsuit while at her prior law firm, that the allegations made by the third-party in the Kars [L]awsuit were determined to be unfounded, and that there is no Tennessee case where the court determined recusal was necessary with facts similar to those in the present case—would reasonably question my impartiality in this case.

On October 3, 2024, Appellant filed the instant petition for recusal appeal in this Court. In addition to the allegations of bias arising from the alleged trespass into Ms. Emory's offices, Appellant also cites several instances from the September 27, 2024 hearing as proof of a pattern of bias on the part of Judge Waters Ogle. The specific allegations are set out and discussed below.

On October 4, 2024, Appellant filed a motion to stay all proceeding in the trial court pending appeal, *see discussion infra*. On October 29, 2024, Appellant filed a supplemental appendix to the petition for recusal appeal. The supplemental appendix contains a motion

to quash that was filed by Judge Waters Ogle in the Kars Lawsuit on October 10, 2024. By the motion to quash, Judge Waters Ogle attempts to quash a subpoena issued to her in the Kars Lawsuit. Attached to the motion to quash is a copy of the Sevierville Police Department Incident Report concerning the August 12, 2024 incident in Ms. Emory's office. There is no order or ruling on the motion to quash.

## II. Issue

Under Tennessee Supreme Court Rule 10B, the only order this Court may review on an appeal is the trial court's order denying a motion to recuse. ***Duke v. Duke***, 398 S.W.3d 665, 668 (Tenn. Ct. App. 2012) ("Pursuant to [Tennessee Supreme Court Rule 10B], we may not review the correctness or merits of the trial court's other rulings[.]"). Accordingly, the sole issue is whether the trial court erred in denying Appellant's motion for recusal. ***Williams by & through Rezba v. HealthSouth Rehab. Hosp. N.***, No. W2015-00639-COA-T10B-CV, 2015 WL 2258172, at *5 (Tenn. Ct. App. May 8, 2015).

## III. Standard of Review

Tennessee Supreme Court Rule 10B requires appellate courts to review a trial court's ruling on a motion for recusal under a de novo standard of review with no presumption of correctness. Tenn. Sup. Ct. R. 10B, § 2.01. The party seeking recusal bears the burden of proof, and "any alleged bias must arise from extrajudicial sources and not from events or observations during litigation of a case." ***Williams by & through Rezba***, 2015 WL 2258172, at *5 (quoting ***McKenzie v. McKenzie***, No. M2014-00010-COA-T10B-CV, 2014 WL 575908, at *3 (Tenn. Ct. App. Feb. 11, 2014)); Tenn. Sup. Ct. R. 10B § 2.01.

In an accelerated appeal, we may request an answer from the other party and briefing. Tenn. Sup. Ct. R. 10B § 2.05. We may also set oral argument, *see id*. § 2.06, and we may grant a stay of the proceedings below "pending [our] determination of the appeal." *Id*. § 2.04. After a review of the petition for recusal appeal and supporting documents, we conclude that neither an answer nor oral argument are necessary.

## IV. Analysis

We begin with a review of the applicable legal principles concerning questions of recusal, which are succinctly stated in ***In re Samuel P.***, No. W2016-01592-COA-T10B-CV, 2016 WL 4547543, at *2 (Tenn. Ct. App. Aug. 31, 2016), to-wit:

> When reviewing requests for recusal alleging bias, "it is important to keep in mind the fundamental protections that the rules of recusal are intended to provide." ***In re A.J.***, No. M2014-02287-COA-R3-JV, 2015 WL 6438671, at *6 (Tenn. Ct. App. Oct. 22, 2015), *perm. app. denied* (Tenn. Feb. 18, 2016).

"The law on judicial bias is intended 'to guard against the prejudgment of the rights of litigants and to avoid situations in which the litigants might have cause to conclude that the court had reached a prejudged conclusion because of interest, partiality, or favor.'" ***Id.*** (quoting ***Bean v. Bailey***, 280 S.W.3d 798, 803 (Tenn. 2009)).

The terms "bias" and "prejudice" usually refer to a state of mind or attitude that works to predispose a judge for or against a party, but not every bias, partiality, or prejudice merits recusal. ***Watson*** [***v. City of Jackson***, 448 S.W.3d 919, 929 (Tenn. Ct. App. 2014)] (citing **Alley v. State**, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994)). "'Even though the judge is expected to have no bias at the beginning of the trial, he must, perforce, develop a bias at some point in the trial; for the decision at the conclusion of the trial is based upon the impressions, favorable or unfavorable, developed during the trial.'" ***Id***. at 933 (quoting ***Spain v. Connolly***, 606 S.W.2d 540, 544 (Tenn. Ct. App. 1980)). To merit disqualification, the prejudice must be of a personal character, directed at the litigant, and stem from an extrajudicial source resulting in an opinion on the merits on some basis other than what the judge learned from participation in the case. ***Id***. at 929. "A trial judge's opinions of the parties or witnesses that are based on what he or she has seen at trial are not improper and 'generally do[ ] not warrant recusal.'" ***Id***. at 933 (quoting ***Neuenschwander v. Neuenschwander***, No. E2001-00306-COA-R3-CV, 2001 WL 1613880, at *11 (Tenn. Ct. App. Dec. 18, 2001)).

***In re Samuel P.,*** 2016 WL 4547543, at *2.

Here, Appellant asserts that recusal is necessary based on Judge Waters Ogle's alleged violation of Tennessee Supreme Court Rule 10, Canon 2.11(A)(1), which states:

Rule 2.11 Disqualification

(A) A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances:
(1) The judge has a personal bias or prejudice concerning a . . . party's lawyer . . . .

As detailed above, Appellant's motion for recusal is predicated on Judge Waters Ogle's alleged trespass into Ms. Emory's office, and also on allegations of bias based on Judge Waters Ogle's actions at the September 27, 2024 hearing.

We begin with the allegations of bias arising from the September 27, 2024 hearing. Appellant asserts that Judge Waters Ogle showed a pattern of bias at that hearing insofar as she:

1. refused to allow presentation of any argument on the Motion, which her assistant set for exclusive hearing the day before (Transcript of 9/27/24 hearing, at 11-12, hereinafter "Transcript"; Notice from Della Poe, Judicial Assistant to Judge Waters Ogle, dated September 26, 2024, attached to Notice of Filing, dated October 3, 2024, at No. 3);

2. conflated argument on the Motion with an evidentiary hearing, based on a misunderstanding of the basic differences, as a basis to foreclose discussion of the August 12, 2024 videotape of her unauthorized trespass in an opposing party's secure office location; Transcript at 11-16;

3. refused any discussion of the facts in the record establishing the recent trespass, by her and her former law partner, into an opposing party's secure office location where confidential records are maintained (the evidence captured on video); *Id*. at 12:18-25, 13:1-19, 16:15-16;

4. admonished counsel for taking a step toward the podium to use the microphone to assist the court reporter's efforts and ordered counsel to remain at counsel table; *Id*. at 12:22-25;

5. repeatedly mischaracterized the declaration of the witness in the record, about which argument should have been allowed, as "unfounded allegations of a third party[,]" *id*. at 7:23-24, and then stated: "And I will say on the record, those third party allegations aren't true. I didn't do that. But I understand those weren't your allegations. You were repeating the allegations of a third party." *Id*. at 6:20-25, *see also id*. 13-14;

6. demonstrated her misunderstanding of basic legal analysis of objective versus subjective standards by announcing that an objective determination of questioning her impartiality required that she take into consideration facts outside the record known only to herself that purportedly exonerated her of any wrongdoing: "basically I have to look at an objective test. And I have to look at whether a person, a reasonable person knowing all the facts known to the judge, to me, would find a reasonable basis for questioning my impartiality in this matter. And I think an important part of that is that this standard requires that like a reasonable person knows all the facts known to me[,]" including her factual contentions that she never met Appellant/Plaintiff's counsel, she had no involvement and billed no time to the separate proceeding where the disqualification motion is pending, that a police report documents that the unfounded third-party allegations were investigated and she has not been charged criminally, etc.; *Id*. at 8:22 - 9:25;

7. repeatedly singled out, admonished and criticized signatory counsel to the Motion, at times emotionally, for not reviewing an inadmissible, hearsay police report that can never properly be introduced into evidence, and repeatedly made much of her argument that an adversarial relationship cannot exist with an attorney or firm she has never met, while shutting down any discussion of video evidence of her unauthorized trespass in the opposing party's locked office space or her role as a material witness; *Id*. at 6:10-25,

16:1-7;

8. refused even to permit Plaintiff/Appellant's counsel to ask clarifying questions, *Id*. at 16:11-16;

9. refused to allow counsel to attach to the transcript of the hearing the Motion to Disqualify Counsel filed in the separate proceeding, a courtesy copy of which had already been supplied to her in chambers on September 19, 2024 for her to have a full perspective on her status as a material witness, *Id*. at 24:11-25:1; and

10. assumed the role of advocate rather than neutral arbiter. *See, e.g., id*. at 13-16.

(Citations to record in original).

If the alleged bias originates during the course of the proceedings, "the party seeking recusal has a greater burden to show bias that would require recusal, *i.e.*, that the bias is so pervasive that it is sufficient to deny the litigant a fair trial." *Runyon v. Runyon*, No. W2013-02651-COA-T10B-CV, 2014 WL 1285729, at *6 (Tenn. Ct. App. Mar. 31, 2014) (quoting *McKenzie v. McKenzie*, No. M2014-00010-COA-T10B-CV, 2014 WL 575908, at *1 (Tenn. Ct. App. Feb. 11, 2014)). This Court has described a "pervasive" bias as one that "reflect[s] an utter incapacity to be fair." *Groves v. Ernst-W. Corp.*, No. M2016-01529-COA-T10B-CV, 2016 WL 5181687, at *5 (Tenn. Ct. App. Sept. 16, 2016). "Judicial expressions of impatience, dissatisfaction, annoyance, and even anger towards counsel, the parties, or the case, will not ordinarily support a finding of bias or prejudice unless they indicate partiality on the merits of the case." *Id*. (citing *Alley v. State*, 882 S.W.2d 810, 822 (Tenn. Crim. App. 1994)).

Appellants characterize the September 27, 2024 hearing as an "evidentiary hearing." In the first instance, this Court has stated that

we are aware of no right to an evidentiary hearing on a motion to recuse. In most cases, conducting such a hearing would run counter to our supreme court's directive that, when presented with a recusal motion, a trial judge must "act promptly by written order and either grant or deny the motion." Tenn. Sup. Ct. R. 10B § 1.03.

*Neuman v. Phillips*, No. M2021-01162-COA-T10B-CV, 2021 WL 6055923, at *3 (Tenn. Ct. App. Dec. 21, 2021). Regardless, from our review, the hearing was not evidentiary in nature. Rather, at the outset of the proceedings, the trial court stated: "There's no reason to have an evidentiary hearing this morning. And I have made a ruling based on Mr. Diegel's, or his client's motion for my recusal." From the transcript, the September 27 "hearing" was ostensibly the trial court's recitation of its ruling on Appellant's motion for recusal and explanation of its basis for denying same. Nonetheless, Appellant contends that the events of September 27 constituted a "sham hearing" because Judge Waters Ogle

ignored the evidence and relied solely on: (1) her personal knowledge; (2) an inadmissible, hearsay police report that can never be introduced into evidence; and (3) the investigation that local law enforcement and the District Attorney supposedly conducted in relation to the August 12, 2024 trespass.

Concerning the "inadmissible, hearsay police report" and the "the investigation that local law enforcement and the District Attorney supposedly conducted," at the September 27 hearing, Judge Waters Ogle stated:

> You're [Appellant's attorney] repeating the third party allegations . . . . I would say that the third parties' allegations were investigated by local law enforcement, and the DA's office. And it was determined they were unfounded. And that report was completed by the Sevier[ville] Police Department on September 13th, and available upon request by the public.

The police report was not produced at the hearing, but, ironically, it was made part of this appellate record when Appellant filed the supplemental appendix to the petition for recusal appeal. As noted above, the supplemental appendix contains Judge Waters Ogle's motion to quash (in the Kars Lawsuit), which was supported by the Sevierville Police Department's report of the August 12, 2024 incident. Having provided this Court with the full police report, Appellant cannot complain of Judge Waters Ogle's passing reference to same. As to Appellant's contention of cumulative and pervasive bias in Judge Waters Ogle's actions at the September 27 hearing, we have reviewed the entire transcript, paying special attention to those portions cited in Appellant's allegations of bias, *supra*, and find no support for Appellant's contentions. Rather, throughout the transcript, Judge Waters Ogle defends herself against the allegations of bias and explains why she will deny recusal. She does not allow Appellant's counsel to rebut because, as explained above, this was not an evidentiary hearing; it was an oral announcement of the court's ruling. The reasons that Judge Waters Ogle explained during the September 27 proceedings were reduced to writing in her order denying recusal. Therein, she specified that: (1) "I do not know Mr. Diegel or any other attorney at the law firm of Baker Donelson"; (2) I did not represent the Plaintiffs in the Kars lawsuit"; (3) "I performed no work on the Kars [L]awsuit"; (4) "I have not communicated or interacted with Mr. Diegel or any other person regarding the Kars [L]awsuit"; (5) "The allegations about this judge made by a third party and repeated by Plaintiff's attorney in the recusal motion were previously investigated by local law enforcement and the district attorney's office and were determined to be unfounded per the investigating officer's report dated September 13th, 2024." At no point in the proceedings does Judge Waters Ogle indicate that she cannot be fair. In fact, she clearly states that, "I want to assure you again, Mr. Dover, I'm not prejudice or biased towards your attorney because of this motion or because of the ruling that I'm making today." There is nothing in the transcript of the September 27 hearing to suggest otherwise, and certainly no indication of "pervasive" bias reflecting "an utter incapacity to be fair." ***Groves v. Ernst-W. Corp.***, 2016 WL 5181687, at *5.

- 11 -

Again, the party seeking recusal bears the burden of proof. ***Williams by & through Rezba***, 2015 WL 2258172, at *5. Here, Appellant's allegations of bias are comprised largely of speculation and insinuation. Appellant would have us infer that Judge Waters Ogle's decision to enter Ms. Emory's office without express permission was in furtherance of her plan to aid her former firm in gaining access to private records important to its representation of the Kars Lawsuit defendants. While Ms. Emory opines that, "Mr. McCarter and Ms. Waters Ogle had the opportunity, outside of camera view, to access and view the confidential documents in my Office," an opportunity to do something does not mean it was done. Like the Sevierville Police Department, we conclude that the video provided by Appellant was insufficient to show that Judge Waters Ogle tampered with any records held in Ms. Emory's offices. As the police report states:

> The video came in three short segments. Each segment showed Adrienne Ogle on or about the couch in the lobby, Travis McCarter near the front window, a second male beside the camera, out of view, except of an occasional clip of his hand, and a second female voice came [to] be heard. At no time do[] the clips presented show any of the participants go into or about the other rooms within the office. The video presented to me also does not show the participants enter or leave the office. It only shows them in the lobby area. There is partial audio of the participants while in the lobby. The audio seems to consist[] of a conversation about the potential use of the office as the participants felt it was unoccupied at least until the video camera was noticed. At this point during the video Adrienne makes a call to what appears to be Keneath Galyon (the owner of the building's daughter), as the name Keneath can be heard. At the end of the conversation it can be heard they are discussing how they are leaving as unknown individuals are going to go out the front door and Travis McCarter and Adrienne go back across through the upstairs. However, the video I have received does not show the participants leaving.

The officer "made contact with Keneath Galyon concerning the phone call. Keneath stated that she did receive a call from Adrienne inquiring about the building's availability." The officer also spoke with an Assistant District Attorney. "Based on the statements of all parties, along with corroborating the phone conversation at the time of the incident, there is no trespassing with the intention to commit a burglary, felony or misdemeanor. [The] ADA [] was in agreement with this conclusion." Other than insinuation, there is no evidence of misconduct on the part of Judge Waters Ogle. Accordingly, we agree with her observation from the bench:

> [A] judge has a duty and I have a duty to hear cases. That's my job. And if I were to recuse myself in cases where . . . somebody I don't know and had no interactions with, a litigant or an attorney, repeats third party allegations against me in their motion to Recuse, and then says, I mean then what, like

you've hurt my feelings and so now I have to recuse myself because I'm bias or prejudice. That would just set a precedent where people, where litigants and attorneys could just, you know, if they just wanted a different judge they could, you know, repeat some third party allegations in a Motion to Recuse and bam, I'm gone. And that is not . . . a precedent I'm willing to set.

Furthermore, at this point, Appellant's contention that Judge Waters Ogle will be a witness in the Kars Lawsuit is speculative. The fact that Judge Waters Ogle filed a motion to quash in that case indicates that her participation as a witness or otherwise is not settled. This Court does not deal in speculation. To conclude that recusal is necessary, the moving party must put forth actual evidence showing how it was prejudiced by some specific act(s) of the trial judge. Such evidence does not exist in this case. Moreover, Mr. Diegel's averment that "I may also be ethically required to report Judge Waters Ogle to the Board of Professional Responsibility based on the August 12, 2024 incident . . .," is mere speculation at this point. Nonetheless,

> [a]s our Supreme Court has explained, the judicial disqualification standards do not require recusal simply because the person seeking recusal has filed some type of complaint against the judge. *See* ***Moncier v. Bd. of Prof'l Responsibility***, 406 S.W.3d 139, 162 (Tenn. 2013) (collecting cases). For example, in one of the cases cited favorably by our Supreme Court in Moncier, the Court of Appeals of Ohio held that a disciplinary complaint filed against a judge will not by itself warrant the judge's recusal. ***State v. Blankenship***, 115 Ohio App. 3d 512, 685 N.E.2d 831, 833 (1996). The concern with strictly requiring recusal in such circumstances, of course, is that it could foster abuse of the judicial system by encouraging people to judge-shop and manufacture recusals. As a general matter, absent some additional showing of bias or prejudice resulting from the complaint against the judge, the complaint standing alone will not ordinarily require recusal. ***Farm Credit Bank of St. Paul v. Brakke***, 512 N.W.2d 718, 722 (N.D. 1994).

***Salas v. Rosdeutscher***, No. M2021-00157-COA-T10B-CV, 2021 WL 830009, at *3 (Tenn. Ct. App. March 4, 2021).

Before concluding, we address Appellant's pending motion. On October 4, 2024, the day after the appeal was filed, Appellant filed a motion to stay all proceedings in the trial court pending the outcome of this appeal. Because we conclude that recusal was not warranted in this case and affirm the trial court's order denying same, Appellant's motion is denied as moot.

- 13 -

## V. Conclusion

For the foregoing reasons, we affirm the trial court's order denying recusal. Appellant's motion for stay is denied, and the case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed to the Appellant, James Travis Dover. Execution for costs may issue if necessary.

___s/ Kenny Armstrong_____
KENNY ARMSTRONG, JUDGE
